## JACK HANKINS v. THE STATE.

No. 21155.   Delivered October 23, 1940.
Rehearing Denied January 8, 1941.

The opinion states the case.

*Vickers & Campbell,* of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for assault with intent to rape, punishment assessed being two years in the penitentiary.

Mrs. Eleanor Graves was the injured party. She had been married seven or eight years, but was not living with her husband at the time of the incidents related. She lived with her mother, Mrs. Moon. Mrs. Graves worked at the Hilton Hotel Coffee Shop in Lubbock. Miss Britton also worked there. On the night of November 9, 1939 the two girls got off from work about ten o'clock and went to a taxicab station for the purpose of getting a cab to take them home. At the station the girls met John Laney and appellant. They were in appellant's car, a coupe. Mrs. Graves was not acquainted with the boys, but was introduced to them by Miss Britton. The boys suggested that they would take the girls home and save them the cab fare. The girls accepted the invitation and got in the coupe. Mrs. Graves sat between Laney and appellant, who was driving, and Miss Britton sat in Laney's lap. The boys either had a pint bottle of whisky when they met the girls, or which they got soon thereafter. Appellant drove to a place called the Calf Stand. They sat out in front, all of the parties drinking cokes and the whisky. When the whisky was gone the boys secured another pint which was also partly consumed before the party broke up. The evidence would indicate that Laney and Mrs. Graves were drinking more whisky than appellant and Miss Britton. Somewhere in the neighborhood of midnight Miss Britton was taken to her home. She saw none of the parties again that night. After letting Miss Britton out at her home appellant took Laney home. The latter was so drunk that after he got out of the car he sat on the curb and vomited. There is little, if any, conflict in the evidence up to the time appellant and Mrs. Graves were left alone in appellant's car. We state the substance of her testimony from that time as follows:

After Laney got out of the car prosecutrix told appellant that she lived just around the corner and asked him to take

her home. He declined to do this, saying, "Let's go have some fun." Prosecutrix insisted on being taken home, telling appellant that she was tired and sleepy. Appellant drove his car to some point on College Avenue and stopped it off the pavement. He then requested sexual favors of prosecutrix, which she refused. He asserted that she was going to yield to his demand. She continued to refuse, and finally told appellant that she was menstruating. He continued his advances after being thus informed, putting his hand up under her clothes and was trying to pull her down into the seat. She resisted with all her strength, and finally appellant hit her on the jaw and rendered her unconscious. When she regained consciousness she was lying by the side of the road in a ditch. She saw some lights down the road and made her way to a tourist camp and had someone call a cab to take her home. She was taken from her home to the hospital. Her jaw was broken in three places and had to be wired together, a rib was fractured, and there was a wound on her leg below the knee, which required one stitch. The doctor who treated prosecutrix at the hospital said the leg wound "had definitely the appearance of her having slid, an abrasion as one would receive from a slide." As a part of prosecutrix' evidence we quote as follows: "* * * at the time I got in the car with these two men and at the time I started out with Jack Hankins after John Laney got out of the car and this other girl got out of the car I had on a sanitary belt and kotex. I also had on a pair of step-ins. After this occurrence I did not have such garments on my person. At the time I was out in this car I had a purse, it was a grey suede purse, or I believe it was a brown purse. I also had on a grey snap-brim hat that night. When I got to the tourist camp that night I did not have either the hat or the purse. I have seen the bag since then. The next time I saw it was when Jack Hankins brought it to the hospital. I think it was Jack that brought it to the hospital while I was there. I don't know whether or not at that time Jack Hankins had sexual intercourse with me or not. He did not as long as I was conscious. Part of the time I was unconscious and I don't know what happened. * * *"

The witness who was called to the tourist camp and took Mrs. Graves home testified that she was covered with blood from the top of her head to her dress, her stockings wet and muddy, and her hands were bloody, and she was spitting up blood. In response to a question from the witness as to what had happened prosecutrix told him someone had broken her jaw, but that she was not talking. When they arrived at her home

prosecutrix was not able to get in the house unassisted, and witness carried her in the house. Her mother, Mrs. Moon, described the condition of prosecutrix when she arrived at home in the following words. "From her appearance and from her talk she was not normal and conscious of everything. Everything wasn't just clear to her because she was suffering so. She was holding her jaw and blood was running from her mouth. I had some conversation with her in regard to what happened. She made the complaint to me at that time as to an attack made upon her by Jack Hankins. * * * I asked her if she had been in a car accident and she told me that it was not a car accident but she didn't go into details. She could hardly talk then on account of her jaw. She said that she had been attacked but she said that she didn't know the name of the boy but that she knew the boy and she could find out from Elizabeth, who he was. She could hardly talk then. She told me that he had hit her and knocked her unconscious, he had hit her with his fist. She said that he had hit her on the jaw and it knocked her unconscious. She said that she tried to get away from him and to fight off and that the last she knew was when he hit her. The last that she knew was when he hit her in the jaw and knocked her unconscious. * * *"

It is shown from the record that after the occurrence related appellant's car ran out of gas and a taxi driven by one Bryant pushed appellant's car into a service station. Bryant testified in substance that he observed in appellant's car a lady's hat and purse, and that appellant requested witness to "destroy" them, giving as his reason that he had some trouble with a woman, and said, "he had hit a woman and that he had raped her." Appellant in his testimony denied making such statement to Bryant. The next day appellant, Laney and Miss Britton went to the hospital to see prosecutrix and appellant then returned to prosecutrix her purse. So far as the record shows the hat, sanitary belt and step-ins remain unaccounted for except that appellant claimed that prosecutrix thought the hat had blown out of the car window.

Up to this point we have condensed the evidence for the State, it being appellant's contention that same is insufficient to support the conviction. In determining such question we must look at the evidence in the strongest light for the State, and we entertain no doubt that the State's evidence, if accepted by the jury as true supports the verdict.

Appellant testified in substance as follows: The reason he

did not take prosecutrix home immediately after Laney got out of the car was because she was very drunk and he thought if they drove around awhile she would sober up; she became sick and started to vomit; she opened the car door and fell out head first. Appellant looked back and saw prosecutrix lying in the ditch beside the road. She was perfectly still, and appellant had been drinking and became frightened. He did not stop the car, but thought he had better get some assistance. He drove to Laney's house. Laney had gone to bed, but dressed and went with appellant to look for prosecutrix, but they failed to find her. He took Laney home again, after which the car ran out of gas and Bryant pushed appellant's car to the service station. Appellant testified specifically as follows: "I did not strike Mrs. Graves with my fist at any time. I did not strike her with my hand or in any other way. I did not have a fight with her. I did not try to take anything away from her. I did not ever suggest such a thing to her. I did not attempt to whip or rape her."

He further testified in substance that after he learned that prosecutrix had been injured and was at the hospital he went there to see her; that she did not appear to be angry with him and made no accusations against him, and told him she had fallen off a railroad track or bridge. Laney supported appellant regarding the search for prosecutrix. Miss Britton and Laney both supported appellant's testimony regarding the attitude of prosecutrix towards appellant at the hospital. On cross-examination appellant admitted that he had first told that the last time he had seen prosecutrix on the night in question she was in Halsey's Drug Store. He also admitted this story was false and he told it because he was scared and "figured that the further I could keep away from this thing the better off I would be."

We have set out in a general way both the evidence for the State and for appellant, in order to demonstrate the two theories and their support by the evidence. It was the province of the jury to settle the disputed issues. Having accepted the State's theory and the evidence in support thereof as true we are without power to disturb the jury's finding.

The evidence would have supported a finding by the jury that prosecutrix sustained some or all of the injuries described as a result of falling out of the car, but such a finding would not have explained the disappearance of the sanitary belt and step-ins.

Bills of exception one and two relate to the same subject and reflect the following: After Mrs. Moon, the mother of prosecutrix, had testified substantially as heretofore set out in this opinion, appellant on cross examination sought to prove by her that on the day after the occurrence under investigation witness made a complaint before the County Attorney charging appellant with aggravated assault upon prosecutrix by striking her with his hand and fist, and inflicting serious bodily injury upon her. It is further certified in said bills that no complaint was filed against appellant charging him with rape until prosecutrix made such complaint on December 1st, and that the indictment was returned on January 10, 1940. When appellant tendered the proof as to Mrs. Moon making said complaint the State through the District Attorney objected for the following reasons: "That has no bearing on the case. If the defendant is permitted to go into all of the details of this filing, it would call for a lot of extraneous testimony. The witness, Mrs. Graves, should not be charged up with any delay in the filing of this complaint because under the law this case could be presented and an indictment returned whether or not any complaint was filed. If the testimony goes in, then it would involve the question as to why it was not filed, the details of Mrs. Graves' condition being such that we could not get the details of the transaction from her and it would involve what was reported to the officers. If they made a mistake in the filing, then it should not be charged to Mrs. Graves or to this witness."

The court sustained the objection, to which ruling appellant brings forward exception. It occurs to us that the court ruled correctly. If at the time Mrs. Moon signed the affidavit she made any statement inconsistent with her evidence given on the trial same might have been shown to impeach the witness. She knew nothing of the facts of the occurrence save as she was advised by others, and whether the acts of appellant as so related to her constituted an offense, and if so, the grade thereof, was only the opinion of the witness or of the officer taking the complaint based on his or her information. We think it not a proper method of impeachment. See Sec. 175, p. 107, Branch's Ann. Texas P. C. for the following text with supporting authorities. "* * * it is not competent to impeach a witness by proof of a contradictory statement which is a mere statement of an opinion when such opinion is not legitimate, such as an opinion as to who committed the offense or as to whether it was an offense." See also 45 Texas Jur. page 62, Sec. 215 with supporting authorities.

The argument complained of in bill of exception number three is not regarded as obnoxious to the extent of demanding a reversal.

The judgment is affirmed.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant has filed and argued a motion herein in which he agrees with the opinion of Presiding Judge Hawkins, except in one particular only, and that is relative to the phrase: "Up to this point we have condensed the evidence for the State, it being appellant's contention that same is insufficient to support the conviction. In determining such question we must look at the evidence in the strongest light for the State, and we entertain no doubt that the State's evidence, if accepted by the jury as true supports the verdict."

His argument is that such rule is a dangerous one to apply in a rape case because of the fact that the minds of the jurors are easily inflamed in such cases, more so than in any other character of alleged crime, and further argument is presented that the State's case should not be taken in its strongest light, unless the same "comports with human experience," and there are therein cited instances that are claimed not to comport with human experience in the facts that are presented to us in this case. Many of these instances have been dealt with in our original opinion and disposed of satisfactorily to us,—such as the filing of a complaint against appellant by prosecutrix' mother on the day after the alleged assault. The further fact that prosecutrix was calm and at times joked with the doctor during a three hour operation in which he wired together her jaw, broken as it was said to be in three places, may not comport with human experience, but doubtless showed a remarkable amount of self-control, and we are unwilling to say that such self-control could be utilized to contradict the fairly satisfactory evidence upon which the jury evidently relied, and we do not think it is sufficient to show that this lady was fabricating her story that she told on the witness stand in the trial hereof.

It will be noticed that this man was convicted of an assault with intent to rape. Evidently some one assaulted this woman; physical injuries were present in abundance. Either she did it, or some one else did, and it seems to us that the method that

she described before the jury might as well comport with human experience as any other that might have been given under such circumstances. as these. Soon after the occurrence the lady told the first person aiding her that some one had broken her jaw; she told her mother the same thing. It also appears that appellant made a statement to one Bryant of a similar import, although. appellant afterwards denied the whole thing, but failed to enlighten the jury as to any of the particulars of the transaction. These facts again confirm us in the correctness of the original opinion in this case, and under the peculiar facts in this case testified to by witnesses before the jury we see no reason to say that such uncontroverted facts do not comport with human experience. While it may be true that facts such as these, showing a brutal assault upon a woman, might be calculated to inflame the minds of the jurors, we do not think any such results are evidenced by the amount of punishment meted out to appellant by the jury's verdict in this cause, he having received the lowest penalty for the offense charged. We think the reasoning in the original opinion is correct and properly disposes of the cause.

The motion is overruled.