## Tom Hunter v. State

No. 27,161. December 8, 1954
Rehearing Granted February 9, 1955

State's Motion for Rehearing Denied
(Without Written Opinion) March 16, 1955

*Willard G. Street, Jr.*, Littlefield, for appellant.

*Joe Sharp*, former District Attorney, *Joe L. Cox*, District Attorney, both of Plainview, *Curtis Wilkenson*, County Attorney, Littlefield, and *Wesley Dice*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for assault with intent to murder with malice; the punishment, three years in the penitentiary.

Appellant challenges the sufficiency of the evidence to establish a specific intent to kill, contending that in the absence of evidence showing that a deadly weapon was used or that serious bodily injury was inflicted the conviction for assault with intent to murder cannot stand.

A specific intent to kill is an essential element of the offense of assault with intent to murder, the intent to kill being a fact question, the existence of which must be determined by the jury from the evidence and cannot be presumed as a matter of law.

The jury may, however, infer the intent from any facts in evidence which to their minds prove the existence of such intent to kill, as from the use of a deadly weapon. Proof of the infliction of injury is not absolutely essential to a conviction for assault with intent to murder. Branch's Ann. P.C., Sec. 1653.

The nature of the wounds inflicted sometimes justify the inference that a deadly weapon was used, and in turn, the use of a weapon which in the manner of its use is capable of producing death or inflicting serious bodily injury is sufficient to

authorize the jury to infer that the assault so committed, with such instrument, was with intent to kill.

Though statements may be found which appear to support such theory, we cannot agree that in every case of assault with intent to murder the evidence must show that the assault was committed with an instrument capable of producing death or serious bodily injury.

In Smith v. State, 160 Texas Cr. Rep. 227, 268 S.W. 2d 144, we upheld a conviction for assault with intent to murder, made upon an infant with the hands, and said:

"An assault with intent to murder upon a helpless child between 9 and 11 months old could consist of the slightest violence applied to its tender body and not necessarily be confined to a vigorous assault as would be necessary against a person of mature age."

We have also upheld convictions for murder inflicted by the use of the hands and with the feet. See Saucier v. State, 156 Texas Cr. Rep. 301, 235 S.W. 2d 903; Ray v. State, 160 Texas Cr. Rep. 12, 266 S.W. 2d 124.

If the weapon used was not of itself deadly, the intent to kill may be established by other facts. Branch's Ann. P.C., Sec. 1636.

The question for our determination then is whether or not the evidence is sufficient to sustain the jury finding that appellant intended to kill Mr. Turner.

In determining this question we are to consider the evidence in the light most favorable to the state. See Hankins v. State, 140 Texas Cr. Rep. 520, 146 S.W. 2d 195; Dunning v. State, 159 Texas Cr. Rep. 215, 262 S.W. 2d 495.

The assault was made upon W. A. Turner on the night of January 22, 1924. Turner was 78 years of age, was feeble, and had been in bad health. He testified that he was on a diet, had a bad stomach and high blood pressure and had been taking medicine; that his health had been bad for three years.

Appellant was 38 years of age and was described as a strong man, a man of robust health and strength.

Turner operated and occupied a room in an apartment or rooming house. He had retired for the night before appellant came to his room, rattled the screen door, then jerked or pulled the dor open, breaking the hook, and without uttering a word began to beat Turner in the face as he lay in his bed.

Mr. Turner called for help, and when a roomer from upstairs arrived and said "Come out" appellant departed. In the meantime Turner had been beaten into a state of unconsciousness and was lying between the bed and the wall.

Asked to tell the jury the extent of his injuries, Mr. Turner testified:

"Well, on the back of my head, why - - I finally rolled over on my right side to keep him from beating me in the face, then, he must have used an instrument that he had, because there was a bruise up there on clear around, and well, about that time, this fellow Curley came down and assisted there and he went out, and they rushed me to the hospital. And I was on the operating table, I guess, an hour. I don't know how many places were sewed up, and that was a big gash too, right there, and it was deep and bad too.

"Q. All right. How long did you stay in the hospital? A. Four days."

Turner testified that there was no weapon used, but when asked "All he was hitting you with is his fists?" he answered "That would be all I could swear to because I didn't see anything else." No weapon was found at the scene.

Mr. Turner was recalled by the state in rebuttal, and was cross-examined as follows:

"Q. Now Mr. Turner, did you - - I believe you testified this morning, didn't you, that you didn't think Mr. Hunter had the intention of killing you, didn't you? A. No, I don't think I did. I think he fully intended to kill me. I think he came in there for that, with that particular idea in his mind, to murder me.

"Q. Well, what kept him from it? A. Well, due to the fact that I got some help down there. I squalled out there for somebody to come down there and Curley Fox came down and said, 'What are you doing in there' and told him to come out and he walked out.

"Q. You think Curley Fox is the only thing that kept him from killing you? A. I do, absolutely."

Dr. G. L. Straub attended Mr. Turner after the assault. He testified that Turner had multple wounds on the face and head and back of the head, and two cuts across his left knee, but said that his general condition was satisfactory. He described the wound found on the back of Turner's head as a "contused wound," and expressed the opinion that it was caused by some blunt instrument and not with a man's fist. Dr. Straub testified also that Mr. Turner was "pretty badly beaten up" but was not in serious condition. On cross-examination he testified that the wound on the back of the head could have been caused from a fall as well as a blunt instrument, and the cuts on the leg could have been caused from broken glass. Also that Mr. Turner was in no immediate danger and not even in probable danger of death.

D. A. Fox heard Turner "hollering for help" and came from his room upstairs. He called to the person who was in Turner's room to come out, and heard the crash of a window knocked out. He called a second time and appellant came out and said "I am going to beat fifteen dollars out of that old man."

Asked if appellant had anything in his hands, the witness Fox testified:

"Well, I couldn't identify it, but he did look like he had something folded up in his hands, but I couldn't tell what it was. I couldn't see it. Of course, his hand was folded big enough, but it looked like he had something in it, but I couldn't swear that there was."

On cross-examination he testified:

"Q. Now, we will go into this thing folded into his hand. That is just a surmise? A. I couldn't swear to what it was.

"Q. You don't know even if there was anything in there? A. Well, I didn't see it much, I couldn't swear.

"Q. It is just a surmise that there may have been something in his hand? A. Yes.

"Q. Now, then, as far as you know, he could have just had his fist doubled up? A. Oh, he had his fist doubled up.

"Q. And did you find any weapon in the room? A. No, I didn't look."

And on re-direct examination he testified that he observed appellant's right hand and "it looked to me like he had something folded up in it—preference to just his fist, but I couldn't tell you what it was. I couldn't see it."

Another roomer, Mrs. Kessler, testified that she heard appellant say he was going to kill Turner and called him "an old S.B." as he broke the latch and entered Turner's room.

Charles Gaddis, who also occupied a room at Turner's place, testified that he had been attacked by appellant sometime before and that when Mr. Turner came to his rescue, appellant said "I will kill you too."

Gaddis testified as to the comparative physical condition and ages of appellant and Mr. Turner, and on cross-examination, gave the following testimony:

"Q. Well, was there anything there to prevent him from killing him? A. Well, I don't know, sir.

"Q. But he is such a strong and robust man and Mr. Turner is so weak, fragile and old that he could have killed him without much difficulty, couldn't he? A. I think so, yes, sir."

And on re-direct examination, testified without objection:

"Q. And from the condition you saw him in there, a little more of the same and he would have killed him, wouldn't he, Mr. Gaddis? A. Yes, sir."

Roy Campbell testified that a week or two before the assault, appellant "said he was going to kill that old son of a bitch if he didn't pay him what he owed him" and that after the assault appellant came to his room with blood on his sleeve and said that he fell down and his nose bled and he wiped it on his sleeve.

Appellant testified and admitted that he made the assault, but denied any intent to kill Turner. He testified also that he could have killed Turner if he had wanted to. He explained that he wanted his fifteen dollars which Turner had agreed to pay him if he would come to get it; that he went in and Turner ordered him to get out and reached under his pillow, he thought for a pistol; that he then knocked him off the bed causing Turner to hit the window and wall; that Turner then got up and went to a dresser drawer and got his pistol; that he struck

Turner only with his fist. He also testified that Turner cursed him and made him mad and he hit him, he did not know how many times.

He admitted that he hit Turner a few times after he got up and also admitted that as a result of former assaults he made on Turner, growing out of the same debt, he had been fined.

In Amman v. State, 145 Texas Cr. Rep. 34, 165 S.W. 2d 744, cited by appellant, the accused fled, refusing to continue the attack which was not shown to have been committed with a deadly weapon and no serious bodily injuries were inflicted.

The fact that appellant did not discontinue the assault until caused to do so by the arrival of the witness Fox distinguishes this case from Ammann v. State.

In Sloan v. State, 76 S.W. 922, and Foster v. State, 39 Texas Crim. Rep. 399, 46 S.W. 231, the accused had in his possession a deadly weapon but did not see fit to use it as such.

In Cage v. State, 77 S.W. 806, the wounds inflicted were not described and it was held that a threat to kill in connection with an assault with the fists was not sufficient to show an intent to kill.

Here the wounds were described, one of which was attributed to a blunt instrument or the result of a fall, and one of the witnesses observed something in appellant's right hand, but did not know what it was.

This case is further to be distinguished from the cases cited by appellant by the proof which shows that because of the advanced age and physical condition of Mr. Turner, it would have required no more than a continuation of the attack to result in a killing which, under the facts, would have been murder. Appellant testified that he could have killed Turner with his hands alone.

We find the evidence sufficient to sustain the jury's finding that the assault was made with intent to kill.

There was no error in the admission of the testimony of Mr. Turner to the effect that appellant was a man of robust health and strength. The parties appear to have been well acquainted and had had prior difficulties and the issue of aggra-

vated assault was in the case and was submitted to the jury. Also Charlie Gaddis testified to the same facts without objection.

Turner testified "there was no serious injuries except there was some scars that took quite a long time to heal up. They looked like they might have been made by some kind of instrument that he had."

The objection to this testimony was made after the answer had been given and there was no motion to have it withdrawn or to have the jury instructed not to consider the answer. If error, it was not such as to call for reversal. See Adams v. State, 160 Texas Cr. Rep. 306, 255 S.W. 2d 513; Deams v. State, 159 Texas Cr. Rep. 496, 265 S.W. 2d 96.

The witness Turner produced the underwear he had on at the time of the assault and the bed sheet and pillow cases that he was lying on, which he testified were in the same condition as they were immediately after the assault. Appellant objected as follows:

"Mr. Street: May it please the Court, we object to the introduction of these clothes and garments. We fail to see how they are material. It hasn't been proven - - just a minute, Mr. Turner. It hasn't been proven that there hasn't been an opportunity for them to have been changed or exchanged, and they are introduced primarily for the purpose of prejudice and that the proper predicate hasn't been laid in that they haven't excluded that they couldn't have been exchanged."

The objection was sustained.

The examination of the witness Turner then proceeded and the following occurred:

"Q. Mr. Turner, are those the same ones, same clothes you had on and the same bed clothes that you were lying on? A. Exactly.

"Q. Now, has there been any stain added to them or anything? A. Not one.

"Q. Are they in the same shape as they were when he got off of you? A. No, sir, they have been wrapped up.

"Q. And you have kept them in your possession? A. In my possession all the time.

"Mr. Sharp: All right. We think they are admissible.

"THE COURT: Yes, sir.

"Mr. Street: Same objection goes, and note our exception.

"THE COURT: I will overrule your objection.

"Q. All right. Unwrap them and hand me the first one. We will mark this Exhibit No. 1. A. I will get the sheet first.

(Whereupon State's Exhibit No. 1 was marked.)

"Q. Now, I hand you State's Exhibit No. 1, what is this, Mr. Turner? A. I beg your pardon?

"Q. I hand you State's Exhibit No. 1, that is what, Mr. Turner, for the purpose of the record? A. That is the bed sheet.

"Q. Is that the one you were lying on that night? A. Yes, sir, the one I was lying on that night.

"Q. And is that the stain - - A. That is where I bled on it that night.

"Mr. Street: May it please the Court, we object to that answer. It hasn't been shown that that is blood and we ask that the answer be stricken from the record."

The objection was overruled.

The shirt and shorts were then marked and identified, and the witness testified that the clothing had his blood on it, occasioned by appellant beating him. Appellant asked that "our same objection" go to each of the garments and exhibits, to which the court assented.

It will be observed that the presence of blood on the exhibits was not the basis of the objection made at the time the evidence was offered. Moreover, the complaint in the latter objection was based upon the failure of the state to prove that there was blood on the exhibits, rather than the presence of blood thereon.

Mr. Turner testified that appellant beat him into unconsciousness as he lay on his bed; that when he regained consciousness he was lying over at the wall, between the bed and the wall.

Appellant testified:

"Q. . . . Were you holding him on the bed with your left hand

and hitting him with your right hand? A. No, sir, when I hit him, I just knocked him off of the bed.

"Q. All right, and then, did you get off over there where he. was and hit him again? A. No, sir, I just stood there and waited until he got up.

"Q. And then you hit him again? A. Yes, sir, hit him again."

" . . . when I went in, why, he said, 'Goddam you, get out of here,' and run his hand under his pillow there to get his pistol, I guess, and when he run up under there with his hand under the pillow, why I knocked him off the bed and he hit that window, hit the wall and window both, I guess, so he got up directly and went around to the head of the bed and pulled his pistol out of the dresser drawer."

The presence of blood on the sheet and pillow cases and on appellant's clothing appears to have been a circumstance to show that the assault was made, and blood upon the bed clothing was a circumstance indicating that appellant did not merely knock him off the bed to prevent his reaching a pistol under the pillow.

In any event, the objections made are not such as to preserve error, if any, by reason of blood stained exhibits being admitted.

The trial court sustained the state's objection to the following question directed to the witness Fox: "You were there and you knew both of these parties, could Mr. Hunter have killed Mr. Turner in that period of time had he been so inclined?"

The trial court was correct in not permitting the witness to state his opinion or conclusion as to what appellant could have done during the interval.

We have considered each of the contentions advanced by appellant in his brief, as above discussed, and find no error calling for reversal.

The judgment is affirmed.

MORRISON, Presiding Judge, dissenting.

I concede that the objection to the introduction of the bloody sheets and underclothes was poorly stated. Still, it is so axiomatic in this state, as well as in other jurisdictions, that bloody clothes are not admissible, unless they tend to shed some light

upon the inquiry, that any objection which states that they were offered "primarily for the purpose of prejudice" should be sufficient. Trial judges should know these fundamental rules and should be alert to avoid the introduction of improper evidence. I fail to see how these articles tended to solve any issue and feel that their admission in evidence should call for a reversal of this cause.

I respectfully enter my dissent.

ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

The general rule, long in force in this state, is that bloody clothing worn by the deceased in a homicide case, or by the injured party in an assault case, is not admissible. The admissibility of such clothing depends upon some exception to that rule. Among these exceptions is that the bloody clothing is admissible if such tends to solve some disputed issue in the case. 18 Texas Jur., Evidence—Criminal Cases, Sec. 210, pp. 339-340.

So, we have here a complaint of the admission of testimony that ordinarily, or upon its face, is not admissible. The burden was upon the state, then, to show the admissibility of the testimony as a condition precedent to its admission.

It is this distinction that differentiates the objection to the admission of the instant testimony as against those instances where the proffered testimony is ordinarily admissible but becomes inadmissible because of some specific fact or reason.

In the one, the objection casts upon the state the burden of establishing the admissibility of the evidence. In the other, the mere objection does not suffice, it being necessary that reasons or facts be claimed which, if true, would render the testimony inadmissible.

These differences are alluded to for the purpose of showing that the same definiteness in stating the reasons for the objection to the admission of evidence is not required where the testimony is, on its face, not admissible.

Of necessity, trial courts must recognize these distinctions and keep in mind that when the state seeks to introduce bloody clothing in evidence, the accused, by objecting thereto, has cast

upon the state the burden of showing the admissibility thereof in evidence.

By force of what has been said, the conclusion is expressed that the objection appellant made to the introduction of the bloody clothing and bedclothes was sufficient to preserve the question for the review of this court.

The original opinion in this case sets out at length the facts supporting the conclusion that an issue existed which warranted the introduction of the bloody clothing.

Upon a further examination of the facts, we have reached the conclusion that we were in error in so concluding.

The issue and only issue in this case was whether the appellant intended to kill the deceased by the use of his fists, which were not such instruments as were calculated to produce death or serious bodily injury.

We are unable to ascribe any reason for admitting in evidence the bloody clothing other than to show the amount of blood that was lost as a result of the wounds inflicted. In Lacoume v. State, 65 Texas Cr. Rep. 146, 143 S.W. 626, we held that bloody clothing was not admissible for that reason.

Believing that the learned trial court fell into error in admitting in evidence the bloody clothing and bedclothes, appellant's motion for rehearing is granted, the judgment of affirmance set aside, and the judgment of the trial court now reversed and the cause remanded.

WOODLEY, Judge, dissenting.

My views are stated in the original opinion, to which views I adhere. Nor do I concur in the holding that there was a burden cast on the state as a condition precedent to the admission of the sheets and clothing.

I respectfully dissent from the order setting aside the affirmance.