Morris **HUNTER**, Appellant,

No. 43742.

v.

The **STATE** of Texas, Appellee.

Court of Criminal Appeals of Texas.

May 19, 1971.

Rehearing Denied June 29, 1971.

Joe J. Newman, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Robert R. Scott, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for assault with intent to commit murder with malice where the punishment was assessed at 20 years.

In six grounds of error the appellant challenges the sufficiency of the evidence, principally contending an intent to kill is not reflected by the testimony.

The State's evidence shows that on October 9, 1967,[1] between 12:30 and 1 p. m., Mary Louise Heizer, a 23 year old secretarial worker, was walking to her apartment from her place of employment when the appellant stopped his automobile near the intersection of Richmond and Kirby Streets in the city of Houston and inquired of her as to the location of "Kirby." She gave directions to the appellant who was alone in a light colored station wagon and continued walking. A few minutes later appellant stopped and again asked directions, offering to take the prosecutrix to her home if she would show him the street he was seeking. She agreed to let him take her to the intersection nearest her apartment approximately a half mile away. When they reached the intersection the appellant did not stop and started "grabbing" at the prosecutrix and suggested sexual relations in lewd and illicit terms. The prosecutrix protested, hit back, screamed and shouted. The appellant then stopped in a residential area, told the prosecutrix to get out, taking her purse and telling her he would return it if she got out of the car. When she got out the appellant placed the purse on his left side.

Standing by the open door (which opened from the front) the prosecutrix leaned back into the car trying to retrieve her purse. At this point the appellant "started" the car, and the prosecutrix grabbed the door to keep from falling. The station wagon traveled from a half block to a block at 30 or 40 m. p. h. while she clung to the door trying to get her feet into the car to keep from falling. She saw the rear end of an automobile ahead and then later woke up in a hospital where she discovered her hip had been broken in four places, her skull fractured, her hand broken and lacerations on her left arm, right knee and rib cage. Altogether she spent eight and a half weeks in the hospital.

Mrs. Evelyn Pierce, who lived in the neighborhood, observed the incident after she heard a girl screaming, "Help me, please help me." She saw a car with a girl hanging on go through a stop sign, go across Hazard Street and continue west on Norfolk. She observed the car swerving, apparently trying to hit a parked car, then strike a blue car parked on the street and saw the girl's body fly back over the top of the station wagon. Mrs. Pierce immediately called the police giving them the license number of the station wagon. She related she did not see the station wagon stop or any effort by the person driving the vehicle to assist the girl.

Mrs. Evelyn Rudd testified she saw the station wagon start up and the prosecutrix catch the door. She observed the car driving fast, bearing to the right, the right door to which the prosecutrix was clinging strike trash cans on the curb before the blue car was hit and the prosecutrix thrown off.

She testified the station wagon did not appear to go out of control. Investigating police officer Boone, who had investigated many motor vehicle collisions where control was a factor, testified there were no skid marks at the scene of the collision.

[1]. The indictment was filed on January 2, 1968. The case was tried on February 19, 1970, and the appellate record reached this Court on December 1, 1970.

The day after the incident described, Houston police officers Boone and Mauldin went to the appellant's residence and discovered him sitting in a station wagon bearing the license number reported and a different colored front door. The appellant then opened a locked garage and showed the officers the damaged door which had blue paint as well as particles of clothing on it. The appellant was then arrested.

An auto parts store operator testified that on the morning of October 10, 1967, at 8:30 a. m. he sold the appellant a new car door.

It was also shown that white paint scrapings were taken from the parked blue Pontiac automobile which was struck along with blue paint scrapings. Police chemist McDonald testified that these samples were identified with samples of white and blue paint removed from the damaged car door recovered at appellant's garage. He also revealed that the dyes and fabric removed were identical with the dyes and fabric of the prosecutrix's blouse which was delivered to him and shown to have been removed from her at the hospital.

Testifying in his own behalf, appellant related his car door was damaged when he struck a different blue car in an entirely different location, and he denied any complicity in the offense charged.

█ Under appropriate instructions the court submitted to the jury the issues of assault to murder with malice, without malice, specific intent to kill and aggravated assault.

In Hall v. State, 418 S.W.2d 810, 812, this Court said:

"It is well established that a specific intent to kill is an essential element of the offense of assault with intent to murder. The intent to kill is a fact question, the existence of which must be determined by the trier of the facts, judge or jury, from the evidence and cannot be presumed as a matter of law. Hunter v. State, 161 Tex.Cr.R. 225, 275 S.W.2d 803.

"The trier of the facts may, however, infer the intent from any facts in evidence which to his mind proves the existence of such intent to kill * * *."

In Ammann v. State, 145 Tex.Cr.R. 34, 165 S.W.2d 744, this Court said:

"The specific intent to kill is an essential element of the offense of assault with intent to murder. Article 1160, P.C. * * *. Such intent may be inferred when the instrument used in committing the assault is a deadly weapon. If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances. If it is possible that death might have been inflicted by the weapon used, and if the accused intended thereby to take life by the use made thereof, the offense of assault with intent to murder is complete, even though the instrument used was not a deadly weapon. Branch's P.C. § 1636; Franklin v. State, 37 Tex.Cr.R. 113, 38 S.W. 802, 1016; Basquez v. State, 114 Tex.Cr.R. 602, 26 S.W.2d 206; Rose v. State, 123 Tex.Cr.R. 261, 58 S.W.2d 526."

It is clear that an automobile may be used as the means to commit an assault to murder. Thom v. State, 167 Tex.Cr.R. 258, 319 S.W.2d 313.

It is basic law that homicide of any type can be committed by means of an automobile. 29 Tex.Jur.2d, Homicide, Sec. 89, p. 98, note #1: 99 ALR 756; Worley v. State, 89 Tex.Cr.R. 393, 231 S.W. 391.

Further, it is well established that the wounds inflicted on the injured party may be looked to in determining whether the means used by the accused was a deadly weapon. 4 Branch's Anno., P.C.2d, Sec. 1815, p. 175. See also Tatum v. State, 159 Tex.Cr.R. 126, 261 S.W.2d 723. "A deadly weapon is one which, from the manner used, is calculated or likely to produce death or

serious bodily injury and a charge is correct which so informs the jury." 4 Branch's Anno.P.C., 2d ed., Sec. 1813, p. 174.

In determining the question of the sufficiency of the evidence to sustain the jury's verdict, we must consider the evidence in the light most favorable to the verdict. See Hall v. State, supra.

We conclude the surrounding facts and circumstances presented were sufficient for the jury to infer an intent to kill.

Grounds of error 1, 2, 3, 4, 14 and 15 are overruled.

In four grounds of error appellant complains of the admission into evidence of the prosecutrix's clothing, the paint scrapings and the damaged car door which the appellant voluntarily showed the officers.

The prosecutrix identified the clothes as those she wore on the occasion in question. A police officer related he obtained the clothes from the hospital where she had been taken and the custody was traced to the chemist who testified that the dyes and fabric were the same as bits of clothing found on the car door.

The blue and white paint samples taken from the blue Pontiac, as well as the paint samples taken from appellant's damaged car door, were also traced to the possession of the testifying chemist. Appellant's reliance upon McCray v. State, Tex.Cr.App., 365 S.W.2d 9 is misplaced. In McCray there was no showing that the sample of paint compared with the paint on the clothing of the deceased came from the automobile that the defendant had been driving.

Appellant also urges that the damaged car door was obtained by virtue of an illegal warrantless search and seizure. The contention is not briefed and under the evidence before us we find no merit in the same.

Grounds of error 5, 6, 7, and 8 are overruled.

Next appellant contends the trial court erred in permitting the State to inquire of him on cross examination as to a conversation had with the officers after he was under arrest.

Prior to the time the appellant took the stand, he called his nephew who testified as to the conversation the appellant had with the officers. On direct examination the appellant also testified as to the conversation he had with the officers even after the time he claimed he was under arrest.

On cross examination the complained of testimony occurred.

"Q. You didn't have any reason not to talk to them, did you?

"MR. NEWMAN: (defense Counsel) If the Court please, we object. It is highly prejudicial. A person is not required to say anything.

"THE COURT: Let's go.

"Q. (by Mr. Scott) In other words, in your testimony you were highly cooperative then?

"MR. NEWMAN: If the Court please, it is the same line of questioning.

"THE COURT: I will let him answer that.

"MR. NEWMAN: A person has the right to remain silent

"Q. (by Mr. Scott) You were cooperative, is that right?

"A. Yes."

The first question complained of was not answered and after the objection to the second question was in effect overruled no further relief was requested. We perceive no error. Further, the appellant having offered evidence as to the conversation, the State was entitled to inquire on cross examination about the same and to go into the balance of the conversation. See Article 38.24, Vernon's Ann.C.C.P. Appellant's

reliance upon Shilling v. State, Tex.Cr. App., 434 S.W.2d 674, is misplaced.

Grounds of error 9 and 10 are overruled.

■ Appellant also complains the trial court erred in permitting the State to question him in the jury's presence about a picture taken in May, 1961, while he was under arrest, thereby injecting an extraneous and prejudicial matter into the case.

On direct examination the appellant testified he had been convicted of breaking and entering a motor vehicle, a felony, and had been placed on probation. No date was given. He also testified a picture had been taken by the police or sheriff's department and that the picture should reveal the condition of his baldness and hair style which had not changed at the time of the offense in question.

On cross examination the State asked:

"Q. You were talking about a picture that the police should have. When was that picture taken by the police with a full head of hair?

"A. A long time ago.

"MR. NEWMAN: If the Court please, we object to any evidence of another and different offense.

"THE COURT: I will sustain it.

"Q. (by Mr. Scott) When was that picture taken?

"MR. NEWMAN: At this time I'm going to ask the Court to retire the jury."

After the jury retired, defense counsel pointed out that the picture referred to was taken in 1961 prior to the "breaking and entering" and represented an effort by the State to inject an extraneous offense which has not been admitted by the appellant. The objection was sustained. The picture was not admitted nor any further questions about the same permitted. The motion for mistrial was overruled. At no time was any jury instruction to disregard requested.

We perceive no error.

■ Appellant next contends the court permitted Officer Boone to testify that he had not observed any physical signs at the scene consistent with an automobile being out of control. Upon objection the question called for "a conclusion;" the court sustained the objection and stated "The answer will not be considered." The witness was instructed not to answer a question when an attorney rises to his feet, but the motion for mistrial was overruled. Thereafter the investigating officer related, without objection, that he had not found any skid marks at the scene of the alleged offense. We find no merit in the contention advanced.

Ground of error 12 is overruled.

■ Appellant's next complaint relates to the testimony of Mrs. Rudd that she did not see the station wagon go out of control at the time of the alleged offense. The ground of error is not briefed nor does the appellant call our attention to that portion of the record to which he has reference. The ground of error does not appear to comply with Article 40.09, Sec. 9, V.A. C.C.P. A page by page examination of Mrs. Rudd's testimony reveals that she answered the question before an objection was interposed, and when the court stated, "Well, it is answered," no further relief was requested.

Finding no reversible error, the judgment is affirmed.