## J. W. ELLIS SMITH V. STATE

No. 26,947. April 28, 1954
Appellant's Motion for Rehearing Denied
(Without Written Opinion) June 2, 1954

228

*William R. Herring,* Dallas, for appellant.

*Henry Wade,* District Attorney, *Fred Bruner,* First Assistant District Attorney, Dallas, and *Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was convicted of an assault with intent to murder with malice upon his stepdaughter, a baby about 9 or 10 months old, by the name of Glenda Kaye Westmoreland. He was by the jury awarded a penalty of 10 years in the state penitentiary and he appeals therefrom.

The testimony shows that on the 8th day of August, 1953, this baby, its mother and stepfather, the appellant, were living in a sort of trailer house in the city of Dallas; that this baby was injured at the time in question and was having a great deal of difficulty with its respiration. A metal airway had been inserted into its mouth and throat so that it could get some relief in its breathing. There were numerous bruises evidenced on this child when she was soon brought to the Parkland Hospital in Dallas. There were bruises about its head and face, and some on its shoulders and trunk, one on the back and some about its chest. It had a large soft swelling over the forehead and on both sides of the skull, and predominantly on the left side. There was a collection of blood beneath the scalp. The left eye was swollen to where it could not be opened. The right eye was also swollen, but not so markedly. There was a fresh abrason of the skin beneath the right eye, and there was a fresh cut just

beneath the nose and upper lip, and this cut extended into the mouth, from the outside clear in through the lip, to the inside of the mouth. There were three separate lesions on this child: one on the left thigh, one on the left side of the abdomen, and one in the palm of the left hand. The child was still blue about the lips, nails and fingers, and after the airway had been in place for a short time the color improved.

Dr. A. D. Sears, a radiologist, testified that he took some X-ray pictures of this child, especially its skull and right leg. In the skull, there were three separate fractures involving the right side and the base of the skull. One skull fracture began at the midline and extended downward; the second skull fracture was what is called an "eggshell fracture, just like a cracked egg, and gives a little radiating starlike fracture, and then radiating out therefrom." Then there were three fractures: one on top of the skull, one in the base, and one in the back. "There was a fracture involving the upper portion of the tibial bone, which is the large bone of the foreleg, of the right leg near the knee joint." In the opinion of the doctor, these fractures could not have been caused by falling out of an automobile, but were caused by a trauma, that is, a physical injury.

The state showed by a neighbor to the appellant that she heard a beating going on and the baby was crying and screaming about the time of this injury; that she went to this trailer and the mother of the child handed it to the witness. The baby was bloody all over. Its face, nose and mouth were bloody. Its mother kept on saying that it was dead. Appellant soon came out of the trailer, took the baby and carried it away to the hospital. The witness never saw anyone strike the baby, but she went into the appellant's trailer and saw blood on the sink therein and on the wall.

Another neighbor made the statement that when she heard the baby crying at the time of the trouble, she also heard the mother, wife of the appellant, say, "Don't, don't, don't." Soon thereafter the door flew open and appellant's wife reached over and laid the baby in the other neighbor's arms. The baby's head and face were bloody, and it was "bobbling its head."

The state then rested its case and appellant introduced his wife, the mother of the child, who told about a trip some six days before to the town of Grandview; that they ran out of gasoline when some distance from this town, and she and a lady companion, who was with them, left to go after some gasoline,

leaving the appellant and the baby in the car. When they returned to the car with the gasoline appellant was washing the baby with a diaper. Its face was all swollen and its nose and mouth were bleeding. Appellant stated that he had gone to sleep while his wife and her companion had gone after the gasoline, and that the baby had crawled out of the car and broken its nose as it fell to the ground. They took the baby to a doctor in Grandview who treated it for a broken nose and put an icepack on her and they kept it on there as long as they could. The child seemed to be getting along all right after this incident until the occasion here in question.

After this child and its mother were taken to the hospital, appellant arrived there, and in a few minutes they were both taken to the city hall, where appellant's picture was taken, and eventually he made a statement to the officers relative to this occurrence as follows:

"Betty Joyce Westmoreland and I was married on June 20, 1953, at Terrell, Texas. She—a nine-months-old baby girl named Glinda Kay— Westmoreland. We moved to 7517 E. Grande about June 23, 1953. I am very nervous and don't feel like working half the time and the baby made me very nervous because she was cutting her teeth and she cried a lot. She made me so nervous last Tuesday, 8-4-53, that I hit her several times with my fist on her body and her head. I hit her several times with my fist against last Wednesday. This was on her head too. I accidentally burned Glenda Kay with a cigarette once and she cried. Since then I have burned her several times with a cigarette to make her hush crying, but she just cried worst. Today, August 8th, 1953, my wife was bathing Glenda Kay and we heard some children screaming and we ran outside to see what the trouble was. When I came back in the house, the baby was about to fall out of the sink, and I got excited and hit her pretty hard in the face with my fist. The baby passed out and I carried her to the hospital."

"Witness: Norma Patterson (signed)
       635 Neely
"Witness: Virginia Ball (signed)
       418 N. Lancaster

"(Signed) J. W. Smith
"Signed by the arrested party."

Appellant states that the cause of the making of this statement was that he was beaten and struck in the face and on the

head by some of the officers in the city hall and that he finally decided to make this statement on account of his fear of further mistreatment by them. He denied the presence of the two witnesses who signed the same and declared that they were not at the scene of the taking of the statement at all.

It is vigorously contended by the appellant's attorney that in the first place, he did not commit any of the injuries that the baby was suffering from, and in the next place, if he did commit such injuries, they could give rise to no higher offense than an aggravated assault, there being no malice shown nor any intent to kill upon his part.

Bill of Exception No. 1 relates to the appellant's written statement just above referred to, claiming that the same was forced upon him by ill treatment of the officers and also that he received no statutory warning before he signed the same. We think the testimony is clear that he did receive such warning, and that he voluntarily made the statement set forth herein. It will be noted that the court in his charge directed the jury to acquit the appellant unless they found that this statement was voluntarily made after the proper warning had been given.

Bill No. 2 relates to a certain self-serving declaration, which was objected to by the state, relative to an occurrence which took place practically a week before the instant one. We find no error reflected in this bill.

Bill No. 3 relates to a certain self-serving declaration of the defendant that he was "always talking about how sweet the baby was." We see no error presented in the failure of the court to allow this self-serving declaration. See Fisher v. State, 148 Texas Cr. R. 133, 185 S.W. 2d 567, and Hulen v. State, 145 Texas Cr. R. 344, 167 S.W. 2d 752.

Bill of Exception No. 4 complains of the action of the court in allowing the state to introduce in evidence a certain photograph of the defendant which was taken at the sheriff's office in Dallas on August 10, 1953. The appellant had previously testified that on August 8, 1952, two days prior thereto, he was bruised, kicked and beaten by the police officers and because of such treatment he signed a voluntary statement. We think that the picture was correctly offered to show the jury how the defendant appeared 48 hours after he claimed that he had been beaten in the head and on his body.

An assault with intent to murder upon a helpless child between 9 and 11 months old could consist of the slightest violence applied to its tender body and not necessarily be confined to a vigorous assault as would be necessary against a person of mature age. The court carefully instructed the jury on this matter and demanded of them that they must find, beyond a reasonable doubt, that appellant struck this child and that in striking the same he intended to take its life; that there could be no offense of assault with intent to kill without a specific intent to take life. He required of the jury that they must find that appellant had the specific intent to kill this child, beyond a reasonable doubt, before they could find him guilty thereof. He also carefully charged the jury on the law of aggravated assault, as well as upon the question of the voluntary nature of the statement set forth herein alleged to have been made by the appellant to the officers.

These matters were difficult ones to decide and were submitted to the jury under the charge of the court as being within their province. They having decided the same in favor of the state, we see no plausible reason offered us whereby we should reverse the verdict thus found by them.

Finding no error in the record, this judgment will be affirmed.