**Fay Leon BLOUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 36357.**

Court of Criminal Appeals of Texas.

Feb. 26, 1964.

Rehearing Denied April 15, 1964.

Robert C. Benavides, Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., Edwin L. Davis, Don Nicholson and Stephen W. Guittard, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is assault with intent to murder with malice; the punishment, confinement in the state penitentiary for ten years.

The state's evidence reflects that in the early morning hours of May 22, 1962, appellant's car made an improper turn from the wrong lane and struck a car driven by Ted M. Akin. Both parties got out to inspect the damage. Appellant became hostile and argumentative and called Akin a "young punk" and told him he couldn't get away with it. Akin suggested calling the police, but appellant became highly excited, cursed and shoved Akin against appellant's

car. Receiving no help from appellant's female companion, Mrs. Tidwell, Akin hailed a passing motorist, Troy Cunningham. Cunningham parked his car near the scene and came over to help Akin. He succeeded in separating the two, but the appellant continued to curse Akin and accused him of trying to rob him. Cunningham also suggested calling the police, and in an effort to quieten appellant, told him to get in his car. Cunningham then hailed a cab driver and requested him to phone the police. Appellant then got in his car and his woman companion slid over to the driver's seat and proceeded to back up toward Cunningham and Akin, who were standing behind appellant's car. The woman then drove the car away. After instructing Akin to take down appellant's license number, Cunningham got in his car and followed appellant's car, which he stopped about 300 feet away. He then went up to the woman driver and advised her that she was violating the law by leaving the scene of an accident, and that since the police had been called it would be better for her to return to the scene. He also said that if she did not return it would be necessary to arrest her.

Appellant according to the testimony of the witness, Cunningham, got out of the car and came around to Cunningham, shoved him against the car and began cursing him. Appellant had his right hand in his pocket and told Cunningham to "Come on, touch me, I am going to kill you". Appellant then grabbed Cunningham's pull-over shirt and pulled it over Cunningham's head and began hitting him. Akin stated that he saw appellant strike Cunningham in the chest, the location of the wounds as developed later in the testimony. Cunningham pulled appellant to the ground and hit him in the mouth to quieten him. Both witnesses, Akin and Cunningham, testified that they heard appellant say to Cunningham at that time, "Boy, you are dead", and "Don't you feel anything?" At this juncture Cunningham looked down and saw cuts in his shirt and blood flowing from the cuts. Akin testified that Cunningham appeared to be "bleeding all over". The injured party stomped on appellant's hand that had the knife in it, and made him turn loose of the knife. Cunningham testified that he told Akin "that he had a knife in his hand and had cut me". Akin then "lifted the fellow's hand up, and kicked the knife out from underneath his hand." The injured party then held appellant until the police came out very shortly. The police radioed for an ambulance and Cunningham was taken to Baylor Hospital. Cunningham described his wounds as being a cut "about two or two and a half inches in that one". He indicated with his hands, right in there, (the record not showing the location), and he related that the next day when he and his wife were noticing under the bandage, "we saw two other cuts in there, clean cuts". The witness further related, in response to a question: "All right, were you treated at the hospital?", "Yes, sir, he sewed me up there." Question: "Did you see the stitches that he took in you?" Answer: "Yes, sir." Question: "How many stitches did he take?" Answer: "He took ten stitches." Question: "All right, then you went home, is that right?" Answer: "Yes, sir." Question: "I will ask you if subsequently, after this time you later had to go back to the hospital for corrective surgery?" Answer: "Yes, sir, I did." Question: "How long were you in the hospital that time?" Answer: "Thirteen days." The knife was then identified and introduced into evidence. Officer Hollingsworth testified that the knife was approximately 6 inches long. The witness, Akin, later testified that the wound sustained by Cunningham was on the left side, several inches below the breast, two to two and a half or three inches long. He also testified that Cunningham was bleeding profusely. Mrs. Cunningham testified that the wound in her husband's left side was located "approximately three and a half or four inches below the left nipple; that the scar remains there and that the scar is about two or two and a half inches in length. The witness was asked: "Was that on the front part of the chest in

the vicinity of the heart", and she responded: "Yes."

While the prosecutor suggested the words "stab" or "stabbing" by some of the questions asked, the injured party, Cunningham, always replied "cuts" or "cuts with a knife." Appellant's testimony does not show him to have stabbed the injured party. He used the word "cut" in his testimony.

Appellant cites us many cases in support of his contention that the evidence is insufficient to sustain the verdict.

The State contends that the evidence is sufficient, and it supports its position by citing many cases.

We have striven hard to leave the jury's verdict undisturbed, and we have closely and carefully examined the cases supporting the State's position and applied these cases to the case at bar. We do not believe that the evidence is sufficient to support the verdict and sustain the judgment, but we shall distinguish some of the outstanding cases cited, from this cause, prior to disposing of this case.

In Jennings v. State, 367 S.W.2d 670 the question before this court was the sufficiency of the evidence to support the conviction of appellant as a principal. Appellant grabbed the officer's left wrist and right arm and got him off balance while appellant's son cut the officer. The officer was severely cut and was carried to the hospital in an ambulance. *His injuries were established by medical testimony.*

In Caballero v. State, Tex.Cr.App., 354 S.W.2d 940, the injured party testified he was *"stabbed"* in the back and side around his spleen; that he was taken to the hospital and an *anesthetic administered*, and he *remained in the hospital 8 days.*

Franklin v. State, 37 Tex.Cr.R. 113, 38 S.W. 1016 is cited in Caballero, supra. Franklin's weapon was a *sound bois d'arc stick three or four feet long*, and *about one and a half inches in diameter*; prosecutor was *struck on the back of the head with the*

stick, was stunned and dazed and then struck several additional blows; he was confined to his bed for several days.

Jackson v. State, 48 Tex.Cr.R. 648, 90 S.W. 34, also cited in Caballero, supra, the weapon used was a stick 2 feet long, 2 inches in diameter, but there was a conspiracy to murder prosecutor shown, so appellant could marry prosecutor's wife; also, a choking was shown.

Basquez v. State, 114 Tex.Cr.R. 602, 26 S.W.2d 206 cites with approval both Franklin's case and Jackson's case. In Basquez, he inflicted a *fractured skull* on his victim, as well as several *deep cuts*.

In Daugherty v. State, Tex.Cr.App., 216 S.W.2d 222, the assailant knocked the injured party down, obtained an empty quart bottle, broke the bottom out of it, and with the jagged part thereof struck, beat, and cut the injured party on the head and neck inflicting a *serious* wound on the neck such that it might have caused the man's death. In the case at bar, both participants were men, the injured party being much larger and younger than the appellant also the issue of self-defense was raised by the evidence and the jury was charged as to this defense.

Flores v. State, 168 Tex.Cr.R. 629, 331 S.W.2d 219, a joint trial under joint indictment charging two brothers with "assault to murder." Carlos Flores shot Cantu in the arm with a pistol, after the altercation with his brother, Alfredo Flores, was over. Carlos received 2 years. Alfredo Flores *"cut him with a knife which, in the manner used, was a deadly weapon by which serious bodily injury* was inflicted upon him (Cantu)." He received 4 years. The foregoing excerpt is from the exact wording of the opinion by Judge Davidson. The recitation of the facts as stated by him make the evidence sufficient.

Judge Davidson cites Henry v. State, 157 Tex.Cr.R. 88, 246 S.W.2d 891, Hunter v. State, 161 Tex.Cr.R. 325, 275 S.W.2d 803 and Windham v. State, 162 Tex.Cr.R. 620,

288 S.W.2d 90, in his opinion in Flores, supra. In Henry's case the stab wound was 3½ inches deep, he was hospitalized for 3 months and partially paralyzed. In the Hunter case, the assault was made upon a 78 year old man who was feeble and in bad health and the assailant was a man 38 years of age, strong and in robust health. Also there was testimony that only the intervention of a third party prevented the assailant from killing the old man. The Hunter case further contained testimony that the wounds in question were caused by some blunt instrument other than fists.

In Smith v. State, 160 Tex.Cr.R. 227, 268 S.W.2d 144, 145, relied upon in Hunter, a doctor testified that he took some X-ray pictures of the child; there were three separate fractures of the skull involving the right side and the base of the skull. One skull fracture began at the midline and extended downward; the second skull fracture was what is called an "eggshell fracture, just like a cracked egg, and gives a little radiating starlike fracture, and then radiating out therefrom". Then there were three fractures: one on top of the skull, one in the base, and one in the back". "There was a fracture involving the upper portion of the tibial bone, which is the large bone of the foreleg, of the right leg near the knee joint." The appellant's confession also reflected that he hit the child several times with his fist on her body and her head.

In Windham's case the injured party's throat was cut with a knife; he underwent surgery and was in the hospital for 5 days; a doctor testified that " * * * he was bleeding and had a wound on the back of his neck a half inch in length; that the wound went through a portion of the thyroid gland, cut one side of the trachea, which is the windpipe, and went on behind; * * *. * * * but was such a wound as could definitely be calculated to produce serious bodily injury or death."

Bradshaw v. State, 167 Tex.Cr.R. 469, 320 S.W.2d 833, medical testimony reflects a wound in the injured party's back 3½ inches in length and *5 inches in depth*. The doctor further expressed the opinion that Jackson (the injured party) would have bled to death had he not received attention such as he received and that the injured party was "going into a light shock."

Davis v. State, 165 Tex.Cr.R. 294, 306 S.W.2d 353; the opinion is meager as to the facts, as a Bill of Exception was used to relate them; however, complaint is not made as to the insufficiency of the facts, but about the charge of the Court.

Lott v. State, 164 Tex.Cr.R. 395, 299 S.W.2d 145; we do not regard as being in point here for the reason that this defendant was convicted of the lesser *offense of aggravated assault*.

Marr v. State, 160 Tex.Cr.R. 216, 268 S.W.2d 150; while there was no description given of the knife and no threats were made, the injured party was admitted to the hospital and remained for 23 days; X-rays revealed blood in his chest,—2 pints of blood were drawn out—he was given one or two-pint blood transfusions; the presence of blood in the chest caused the heart to be displaced. Judge Morrison said: "Under the foregoing testimony the injury inflicted appears to us to have been a serious one, an injury such as would give rise to apprehension of danger to life, health or limb."

Mosely v. State, 158 Tex.Cr.R. 623, 259 S.W.2d 225; the injured party was cut by her former husband who had threatened to kill her companion and to cut her throat. He cut her across the face. The wound, according to the opinion by Judge Morrison, presented no danger of death, and the weapon was a pocket knife with a short blade, an officer testified *the knife would be calculated to cause death or serious bodily injury.*

Hernandez v. State, Tex.Cr.App., 375 S.W.2d 289, had medical testimony adduced by Dr. Cigarroa to the effect that such an instrument as the letter opener shown

him may have caused the wound, and that a *penetrating wound with such type of weapon can be calculated to produce death.*

From the foregoing discussion of the various cases relied upon by the State, it is apparent in all of them that the specific intent to kill was inferred when the instrument used in the commission of the assault is a deadly weapon. Since many of these cases deal with weapons not deadly, the intent to kill on the part of the accused must be ascertained from the surrounding facts and circumstances. In all of these numerous cases affirmed by this Court the surrounding facts and circumstances show either serious wounds or wounds calculated to produce serious bodily injury or death, or an instrument calculated to cause death or serious bodily injury.

█ A pocket knife is not per se a deadly weapon, and in order to constitute it such there must be evidence to show that it was so used. Fregia v. State, 79 Tex.Cr.R. 334, 185 S.W. 11. It was stated in Fregia, supra: "If weapon is not shown to be deadly, or wounds serious, it is not assault to murder, though defendant said he intended to kill; the desire to kill is not proof that weapon was deadly". Citing: Cage v. State, Tex.Cr.App., 77 S.W. 806; Foster v. State, 39 Tex.Cr.R. 399, 46 S.W. 231; Sloan v. State, Tex.Cr.App., 76 S.W. 922. As succinctly stated in Hatton's case, Hatton v. State, 31 Tex.Cr.R. 586, 21 S.W. 679; The means used may be looked to, to show intent. If a deadly weapon is used in a deadly manner, the inference is almost conclusive that he intended to kill; on the other hand, if the weapon was not a dangerous one, or was not used in a deadly manner, the evidence must be established by other facts. Hatton shot at Johnson with No. 8 bird shot, but he was too far off to kill him. We think this Court correctly held a shotgun to be a deadly weapon (as it would be in nearly every case that we could conceive of.) We think it important to make a distinction between "stab" and "cut". "Stab" usually implies to thrust or to plunge. "Cut" usually implies to gash or to slash.

A pocket knife or a pen knife with a blade 2¼ inches long (as was the longer blade of the weapon in this case,) must be used in a deadly manner to constitute it a deadly weapon. The evidence in this case shows a hitting of the injured party by appellant. The injured party did not know that he had been cut until appellant told him. The State showed the length of one of the cuts, but it *did not show the depth.* The closest that the State came to making a case of assault with intent to murder was the testimony to the effect that the injured party went back for corrective surgery and remained in the hospital for 13 days. However, assuming the position most favorable to the State, that this corrective surgery was necessary on account of the wounds inflicted upon the injured party by appellant, we find nothing in the record to show or even slightly suggest the injuries, cut or cuts *were of such a serious nature as to likely produce death* or *serious* bodily injury. While it could very well be that the injury was more serious than at first thought and it could have been *a deep cut, bleeding internally,* making corrective surgery necessary; on the other hand it could have very well been that the stitches pulled loose or became infected. We think the testimony should have shown the character or seriousness of the wound. It occurs to us that the state might have shown by the testimony of the physician who dressed the wound, the depth thereof and whether it was a serious wound, as well as the kind and character of the knife used, or both. This same observation also applies to the state's failure to properly show and develop the nature and type of corrective surgery performed. We cannot determine from the record the date that the corrective surgery was performed.

Appellant was shown to be 52 years old, weighed approximately 175 pounds and had just been released from the hospital where he had received treatment for a heart ailment, and he described the knife which he used as a "little old penknife". The injured party, Cunningham, was 34 years old and weighed 210 pounds.

There remains thus only threats which the injured party attributed to appellant. He stated that after the altercation began appellant said, "Come on, touch me, I am going to kill you; just touch me, I am going to kill you, hit me, I am going to kill you."

The general rule as to assault with intent to murder cases will be found in Fregia v. State, supra, Ammann v. State, 145 Tex. Cr.R. 34, 165 S.W.2d 744, and 29 Tex.Jur.2d, Sec. 109, p. 127: "So the fact that the accused threatened to kill the person assaulted or stated at the time that he intended to kill him does not warrant a conviction, if there is no showing that the weapon used was a deadly one, and there is no such description of the wounds as would justify the inference that such a weapon was used." See also Hare v. State, 128 Tex.Cr.R. 203, 80 S.W.2d 963 and Jones v. State, 116 Tex. Cr.R. 30, 28 S.W.2d 146 and Barnes v. State, Tex.Cr.App., 356 S.W.2d 679.

Sadler v. State, Tex.Cr.App., 364 S.W.2d 234, was a *murder* case in which a physician testified that he did not find anything that could have caused the death except the wounds which he examined and which had been inflicted by blunt force. The facts of that case are stronger than those in the case at bar, especially in view of the fact that death did ensue.

Wood v. State, Tex.Cr.App., 374 S.W.2d 896, involves a father beating his 2 year old daughter. There was medical testimony that the child had a brain concussion, along with numerous other injuries, *"that her condition was critical and could have caused death"*. It is obvious that the facts are much stronger in Wood, than in the case at bar.

█ The facts herein do not, under the authorities above cited, and the rule taken from the early case of Franklin v. State, 37 Tex.Cr.R. 113, 38 S.W. 1016, recognized by this Court in its opinion on Motion for Rehearing in the case of Hernandez v. State, supra, and consistently followed since the opinion in Franklin's case, supra, was rendered in 1897, support the conviction.

Accordingly, the judgment is reversed and the cause remanded.

WOODLEY, Presiding Judge (dissenting).

The rule referred to in the majority opinion is that if the weapon was not a deadly weapon " * * * the jury may arrive at the intention of the party from the surrounding facts. If it *was possible* that death *might* have been inflicted by the weapon, and the defendant intended to take life, though *the weapon was not a deadly weapon,* still he might be guilty of an assault with intent to murder." (Quote from Franklin v. State, 38 S.W. 1016, cited in Hernandez v. State, supra.)

No expert testimony was needed to establish the fact that the knife was an instrument with which *it was possible* for the appellant to kill Cunningham.

As I see it, the facts viewed in the light most favorable to the state sustain the jury's finding that the appellant made the assault upon Cunningham, the peace maker, with the intent to kill.

When Cunningham arrived, the appellant, who had the odor of liquor on his breath, was cursing Akin, a Dallas lawyer, and was fighting him. He accused Akin of trying to rob him.

After Cunningham had stopped a cab and asked the driver to call the police and had told the appellant to get in his car and wait, and after he had overtaken the car as it was leaving the scene, and had walked up to the driver's side and was talking to the driver, the appellant got out on the other side of the car, came around and attacked Cunningham.

The appellant admitted on cross-examination that he got out of the car and went around there *to get him* (Cunningham).

"Q. But still, you got out of the car and went around there to get him, didn't you?

"A. *Yes, sir, I sure did.*

When he came around he started shoving Cunningham—shoved him up against the car—cursed him and with his hand in his pocket said:

"Come on, touch me, I am going to kill you; just touch me, I am going to kill you, hit me, I am going to kill you."

"Q. As he did that, what, if anything, did he do next?

"A. Well, the next thing I know, he had my shirt over my head and really hitting at me.

"Q. All right; what, if anything, did you do after he pulled your shirt over your head and hit you in the chest there?

"A. Well, I was wrestling with him, got ahold of both hands, and finally got him down on the ground, and whenever I got to where I could see what I was doing, then I doubled up my fist and hit him in the mouth, and when I did that, he quit. It just took all of the fight out of him and he looked up at me, kind of grinned and says, 'Boy, you are dead.'

"Q. What, if anything, did you say?

"A. I said, 'What?' And he said, 'Man, don't you feel it yet?' Kind of grinning, laughing—

"Q. And what did you do after he said that?

"A. I looked down then and then I saw the knife in his hand and looked over and saw the blood dripping out of my side, then felt it running down my side.

"Q. All right.

"A. And I stomped on his hand, then, the hand that had the knife in it, and made him turn loose of the knife."

The knife which was used was introduced in evidence and is before us. It appears to be an ordinary pocket knife, both of its blades being sharp.

The fact that the appellant continued his assault with the knife until he was overpowered is a circumstance which the jury could take into consideration in determining whether he intended to kill.