Rance **BOAZMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46915.

Court of Criminal Appeals of Texas.

Dec. 5, 1973.

Rhodes & Seamster, Yates & Yates (on appeal only), Abilene, for appellant.

Ed Paynter, Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of assault with intent to murder without malice. Punishment was assessed by a jury at three years.

Two grounds of error are urged, the first being that the trial court erred in submitting assault with intent to murder without malice to the jury. He argues the evidence is insufficient to show a specific intent to kill, since the weapon used was a pocket knife, which is not a deadly weapon per se.

The record reflects that on March 19, 1972, at approximately 7:00 P.M., Kathryn Wright was stabbed or cut in three different places while in her home at 1825 Meadowbrook, in Abilene. Appellant was arrested on that date and subsequently indicted for this offense.

Plummer Edwards, a salesmanager for Jack Chevrolet Company in Abilene, testified that appellant had worked for him as a new car salesman for approximately two years; but about two weeks prior to March 19, 1972, appellant phoned and asked him to call Mrs. Wright and tell her that he was going to kill her if she didn't come back to him; and that he then called her and relayed appellant's message.

Mrs. Peter Bruno testified that on March 19, 1972, she was acquainted with Mrs. Wright and appellant; that Mrs. Wright lived directly acoss the street from her; that on March 19th, at approximately 7:00 P.M., she heard loud voices coming from inside Mrs. Wright's house; that she saw appellant come out the front door of the house and walk toward a tree near the house; and that appellant had blood all over the front of his shirt. Mrs. Bruno's fifteen year old son testified to substantially the same facts and, further, that he saw appellant choking Mrs. Wright and heard her yell "Quit it."

Glen Lawrence, a police officer for the City of Abilene, testified that on March 19, 1972, at approximately 7:00 P.M., he received a radio call to go to 1825 Meadowbrook; that when he arrived appellant was standing in the front yard; that appellant had blood on his clothing and hands; that appellant made the statement that a lady inside had been stabbed; that a neighbor told him to go look at a tree which appellant had walked towards; that he found a pocket knife [1] under this tree; and that the pocket knife was open at the time he found it and had blood on its blade. Lawrence also testified that he found Mrs. Wright lying on the floor when he went into the house; that she was bleeding heavily from several parts of her body; and that appellant stated to him that a Negro had broken into the house and had stabbed her and tried to rape her.

Dr. Curzon C. Ferris testified that on March 19, 1972, he treated Mrs. Wright at

---

1. The knife was introduced into evidence as State's Exhibit No. 8.

the emergency room of Hendrick Hospital and that Mrs. Wright was suffering from three stab wounds. He stated that a pocket knife, such as State's Exhibit No. 8, could, if wielded in the proper fashion, cause a person's death.

Kathryn Wright testified that she had been married to the appellant but they were divorced; that appellant came to her house at approximately 6:30 P.M. on March 19, 1972, and she invited him in; that they got into an argument and she asked him to leave, to which he replied by stating: "No, I am not going home. I am going to kill you"; that appellant then pulled a pocket knife out of his pocket and started to "work on her"; that she tried to fight appellant off and was stabbed in the breast and back; that while she was screaming for help, appellant was choking her and stabbing her at the same time; and that she finally freed herself, ran toward the back door and fell down again; that appellant then started choking her again, whereupon she managed to kick the knife out of his hand. Mrs. Wright also testified that she finally persuaded appellant to stop choking her and that he called the police and an ambulance.

Appellant, testifying in his own behalf, stated that Mrs. Wright had asked him to come by her house on the day in question; that he drank a fifth of I.W. Harper and a six-pack of beer prior to arriving at her house; that they got into an argument, whereupon Mrs. Wright hit him on the arm with a broom handle and called him a "dirty son-of-a-bitch" and that he then hit her and knocked her down. Appellant also testified that Mrs. Wright fell to the ground; that she then screamed and rolled over, whereupon he saw a pocket knife sticking out of her chest; that he picked her up twice and she fell twice; and that he then called an ambulance. He stated that he loved Mrs. Wright and did not know where the pocket knife had come from.

■ Article 1160, Vernon's Ann.P.C., makes it an offense to assault a person with intent to murder. There are two elements of this offense: (1) there must be an assault; and (2) the assault must be carried out with the specific intent to kill. The intent to kill may be shown by the use of a deadly weapon per se. Stallings v. State, 476 S.W.2d 679 (Tex.Cr.App.1972). If the weapon used is not a deadly weapon per se, then the intent to kill may be ascertained from and shown by the surrounding facts and circumstances. See Young v. State, 384 S.W.2d 710 (Tex.Cr.App.1964). Even though a pocket knife is not a deadly weapon per se, the mode and manner in which it is used, along with the wounds inflicted on the injured party, are some of the factors used in determining whether the accused had a specific intent to kill. See Williams v. State, 477 S.W.2d 24 (Tex.Cr.App.1972).

Appellant urges that we adopt the reasoning of this Court in the case of Blount v. State, 376 S.W.2d 844 (Tex.Cr.App. 1964) concerning the seriousness of the wounds inflicted. In *Blount*, supra, this Court thought it important to make a distinction between "stab" and "cut," stating that "stab" usually implies to thrust or plunge and "cut" usually implies to gash or to slash. Upon re-examination of that case, we conclude that the better rule is that expressed in the dissenting opinion, wherein Presiding Judge Woodley stated:

"If it was possible that death might have been inflicted by the weapon, and the defendant intended to take life, though the weapon was not a deadly weapon, still he might be guilty of an assault with intent to murder. . . ."

■ In the case at bar, the jury had sufficient evidence to determine beyond a reasonable doubt that appellant had a specific intent to kill Mrs. Wright. See Marrero v. State, 500 S.W.2d 818 (Tex.Cr.App. 1973); Abels v. State, 489 S.W.2d 910 (Tex.Cr.App.1973); Washington v. State,

471 S.W.2d 409 (Tex.Cr.App.1971). To the extent that Blount v. State, supra, and other cases are inconsistent with the holding herein, they are overruled.

Finally, appellant contends that the court's charge on accident was erroneous in that it placed upon him an added burden not justified by the facts or law. That part of the charge stated:

> "You are instructed that no act done by accident is an offense. Therefore, if you find from the evidence, or have a reasonable doubt thereof, *that the injured party, Kathryn Wright, sustained injuries received by accidentally falling and striking a knife causing said knife to enter her body,* then the defendant would not be guilty as charged in the indictment, and if you find the facts so to be, or if you have a reasonable doubt thereof, you will acquit the defendant." (Emphasis supplied.)

■ Appellant argues that the issue of accident was properly raised by the evidence but that the issue was not whether there was an accidental falling but whether there was an accidental knifing. Thus, even if the jury believed his testimony, they could not have acquitted him under the court's charge on accident.

We conclude that the charge given adequately protected the rights of appellant and, although not applying the law to the facts as preferred by him, was sufficient for the jury to have acquitted him, had they believed his version of the facts. See generally, Estrada v. State, 422 S.W.2d 453 (Tex.Cr.App.1968).

There being no reversible error, the judgment is affirmed.

MORRISON, Judge (concurring and dissenting in part).

I agree to the affirmance of this conviction, but dissent to the overruling of Blount v. State, supra, in which I participated.

Blount, supra, was distinguished in the case of Gipson v State, Tex.Cr.App., 403 S.W.2d 794. There, the injuries to the elderly female victim were comprised of a mild cerebral concussion, and severe abrasions, scratches and contusions, including one to the kidney, a possible rib fracture, and small areas of lung collapse. We quote from Gipson, supra, as follows:

> "Dr. Suehs further stated that, while he did consider Mrs. Wicks's injuries serious and they could have produced death 'if they had continued,' he never did place her on the critical list and he did not think she was going to lose her life."

Gipson, supra, further distinguished Blount, supra, on the basis of the relative size and weight of the parties, and the fact that the attackers, in Gipson, supra, desisted only when interrupted.[1] In the case at bar, the attack was committed by a male upon a female, and the attack ceased when the injured party managed to kick the knife from appellant's hand, and persuaded him to stop.

The case of Blount v. State, supra, is sufficiently distinguishable from the case at bar and need not be overruled. See also Moseley v. State, Tex.Cr.App., 259 S.W.2d 225.

ONION, P. J., joins in this opinion.

---

1. In Blount, supra, the injured party subdued his attacker.