Alex GUERRERO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00064–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 8, 1997.

Discretionary Review Refused

July 1, 1998.

Nancy B. Barohn, Dallas, Laura Greenberg, San Antonio, for Appellant.

Barbara Hervey, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before HARDBERGER, C.J., and ANGELINI and SHIRLEY W. BUTTS (Retired),[1] JJ.

## OPINION

SHIRLEY W. BUTTS, Justice (Retired).

Alex Guerrero appeals his conviction for the offense of aggravated assault. TEX. PENAL CODE ANN. § 22.02(a)(1) (Vernon 1994). After finding him guilty, the jury assessed punishment at eight and one-half years imprisonment and a fine of $10,000.

Appellant advances four points of error: that the trial court erred in restricting his constitutional right of confrontation and cross-examination of the complaining witness; that the court erred in overruling his objection to the prosecutor's jury argument; that there existed alleged fatal variance between the pleading and the evidence; and that, contrary to the trial court's order granting his motion in limine not to admit evidence of his previous assault of the same person, the evidence improperly came before the jury to his prejudice. We affirm.

### Cross–Examination

The evidence at the guilt-innocence phase of trial showed that appellant and the complaining witness, Annette Garcia, had sometimes lived together at her house for the past year. The charging information alleged that on August 7, 1995, appellant assaulted Garcia by stabbing her with a knife. Garcia was married to David Garcia, who was then on parole but not living with her. She explained, "He was always in prison."

Appellant and Garcia "broke up," and appellant moved out on the morning of August 7, 1995. On the way to a club that night with Melissa Maldonado, Garcia saw appellant and talked to him on Old Pearsall Road. Then the two women went to the Tejano World club where they met appellant again. The three went back to Garcia's house. Both Garcia and Maldonado testified they left appellant's

1. Assigned to this case by the Chief Justice of the    Supreme Court of Texas.

truck there and went to another club, the Something Different.

After they consumed some drinks, Garcia went to the ladies room. A woman there asked her whether she was back with "Psycho." When Garcia returned to their table, she and appellant argued about that characterization, and he was very angry. Garcia, Maldonado, and appellant left the club and returned to the house, where appellant refused to give Garcia her car keys. They argued and he pushed her, and she pushed him. He struck her and when she fell, appellant, who was wearing boots, kicked her. Maldonado tried to help by jumping on appellant's back and tearing his shirt.

When Garcia screamed for her niece, Tanya Quintero, to call the police, appellant reached through the burglar bars and tore out the phone cord. There was evidence that appellant dragged Garcia into the house. She testified that appellant went back to his truck and got his knife, immediately started using it on her, telling her she deserved it. He threatened if either of the other two women called the police, he would cut Garcia's throat. He locked Garcia in the bedroom and locked the other women outside. Maldonado also testified that appellant threatened to "slice" Garcia's throat, and was kicking, beating, and dragging her. Quintero and she ran outside, and as they left, she saw appellant going at Garcia with a knife. Quintero testified that as Garcia tried to pull away from appellant, he stabbed her with the knife. "He was stabbing her like on top, but she kept blocking. She would put up her hand and he would stab her in the hand, but from where I was standing, you couldn't tell where he was stabbing her."

When the Fort Worth police, summoned by Maldonado, arrived, Detective Sherry Koch, an evidence technician, found much blood outside and in the kitchen, living room, hallway, bedroom, and bathroom. Koch said she took photographs of the scene that seemed to reflect that life-threatening wounds had been inflicted.

Garcia testified that appellant put her in his truck, saying they were going to die together. But he drove to his aunt's house. The aunt directed him to take the woman to the hospital, and he did. At the hospital later, Detective Koch recovered the knife from appellant's truck. She stated it was a deadly weapon capable of causing death or serious bodily injury. The complainant's hand required surgery. She displayed a five-inch scar at trial and showed she had lost the full use of her little finger.

Appellant testified, denying that he struck or kicked her or assaulted her with his knife. The defense theory was that David Garcia, the husband, then on parole, attacked Garcia when he found her with appellant. In furtherance of that theory, the defense was that Garcia lied about the identity of her attacker to protect her husband and prevent revocation of his parole. Appellant also said all three women lied about his committing the assault.

In presenting the defensive theory, appellant testified that when he, Garcia, and Maldonado returned to the house, David Garcia confronted him for being with his wife, and they fought. Appellant said Garcia went to his truck and got a gun, pointing it at appellant, who in turn pulled his knife and swung at the other man. He said no one was hurt, and both men left, but on his way home appellant was paged by the complainant. He stated he returned and found her bleeding. He took her to his aunt's house and later to the hospital. He denied that taking her to his aunt's house was to avoid apprehension, stating that because he had been drinking, he did not want to get into trouble.

Appellant complains he was not permitted to develop his defensive theory of the case because the court limited his cross-examination of the complainant. Defense counsel first inquired of the complainant whether her husband was currently on parole. The State's objection was sustained, and the court ruled this "doesn't mean beans to this case. It is irrelevant."

Defense counsel then made a bill of exception outside the jury's presence. He asked whether David Garcia was currently on parole. Complainant answered that he was in jail and she did not know. Counsel asked:

Q. Was David on parole on August 7, 1995?

A. Yes. [She confirmed he was out of jail then.]

When counsel asked whether she had any contact with him then, the court interrupted that this was not a discovery matter and halted the questioning. Counsel argued that the questions went to the complainant's motive for testifying as she did.

Defense counsel then asked the complainant whether David and appellant fought that night. She answered, "No." At that time, the trial court advised defense counsel that he could recall the complainant and question her before the jury. The court stated:

> I think if he wants to ask her if he was free on that date, he is perfectly entitled to do that, but when he was on parole, when he is not on parole, the fact that he is in prison has nothing to do with anything.

Defense counsel argued:

> Well, if [appellant] says she was not stabbed by him, but that he left, and there was a fight between Annette and David, or he left David there, or David was jealous when he got there, as the jury has already heard, if he [David] stabbed Ms. Garcia, then that would go to her motive [for] bias or animus for testifying perhaps to save the husband that she is still married to from revocation.

After that explanation, the trial court changed its ruling, withdrawing the previous limitation:

> You may ask her if she was aware that he was on parole, if he was free at large at the time of this incident, and if she is testifying in a manner as to keep him from being revoked on parole.

The court stated that the jury would be brought back in and the complainant recalled. Then defense counsel could prove up that her husband was free and at large at the time. "And ask her about motive in relations to parole. And that will be it."

The following ensued when the complainant was recalled:

Q. Was David Garcia free and at large on August 7, 1995?

A. Yes.

Q. Were you aware that he was on parole on that date?

A. Yes.

Q. Are you testifying here today in such a manner as to keep him from being revoked on his parole?

A. Excuse me? Can you say that again?

Q. Are you testifying here today in such a manner as to keep him from being revoked on his parole?

A. Okay. Am I testifying?

Q. Yes.

A. To—

Q. You have testified about an incident on August the 7th of 1995?

A. Right.

Q. Are you testifying—

A. But David had nothing to do with this.

Q. That was my question. And your answer is he had nothing to do with it?

A. Right.

Q. Thank you. [Counsel said, "Pass the witness."]

The prosecutor then questioned the complainant:

Q. Ms. Garcia, did David Garcia come to your house that night after you had been out with [appellant]?

A. No.

Q. Was he in any way involved in that injury to your hand?

A. No.

Q. Could you tell us who cut your hand?

A. Alex Guerrero.

\*        \*        \*        \*        \*        \*

An accused has the right to confront witnesses and to establish any bias on the part of the witness to testify in the manner that he has. *See Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App.1996); *Evans v. State,* 519 S.W.2d 868, 871–872 (Tex.Crim.App.1975). "While exposing a witness's motivation to testify against a defendant is a proper and important function of the constitutionally protected right to cross-examination, and the defendant is allowed great latitude to show any fact which would tend to establish ill feeling, bias, motive, and animus on the part of the witness testifying

against him, this right does not prevent a trial court from imposing some limits on the cross-examination into the bias of a witness." *McDuff v. State,* 939 S.W.2d 607, 617 (Tex. Crim.App.1997); *see also Chambers v. State,* 866 S.W.2d 9, 27 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1987).

■ In the present case, although the trial court initially indicated that appellant could not go into matters involving David Garcia's parole, the court shortly thereafter changed the ruling to permit defense inquiries regarding bias and motive, designating three permissible areas of cross-examination. As soon as the complainant protested, "But David had nothing to do with it," defense counsel stopped his questioning to determine bias or motive and stated in conclusion, "That was my question. And your answer is he had nothing to do with it?" Apparently satisfied that the wife's answer showed she was trying to protect her husband and thus demonstrating her motive to testify that it was appellant who injured her, appellant passed the witness. In his argument to the jury, defense counsel presented appellant's defensive theory of the complainant/wife's bias and motive for accusing appellant.

On appeal, appellant says that the trial court unconstitutionally restricted his cross-examination. While this was true initially, as noted above, the trial court reconsidered and permitted the cross-examination to illustrate bias and motive. The record does not reflect that the court subsequently terminated or halted that cross-examination. It expressly reflects that defense counsel himself concluded his cross-examination when he obtained the answer he wanted. There was no further objection that cross-examination of the witness's bias and motive had been restricted. Defense counsel then relinquished the witness to his opponent. And appellant's argument to the jury demonstrated the complainant's potential motive or bias to testify against him. Abuse of discretion by the trial court has not been shown. Point of error one is overruled.

## Jury Argument

Appellant objected to this portion of the prosecutor's jury argument:

I mean, why is he called psycho? Why is that? What do you think? He cuts people with knives.

The objection was:

Well, there is no evidence of anything like that, Your Honor. That is absolutely outside of the record. I object to it.

■ The court overruled the objection. There are four permissible areas of jury argument: 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) responses to opposing counsel's argument; and 4) pleas for law enforcement. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App. 1995), *cert. denied,* 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Alejandro v. State,* 493 S.W.2d 230, 231–32 (Tex.Crim.App. 1973). We will consider the argument in the context in which it appears. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988).

Appellant's objection was that the argument was outside the record but did not specify which evidence—being called "psycho" or that he cuts people. Regarding the "psycho" reference, the complainant testified that when she went to the restroom, a woman there asked her "if I had gotten back with the psycho—" She took this to mean appellant and answered, "Yes." Another woman there then said, "He was never psycho with me when I was with him." Appellant did not object at that time to his label, "psycho."

■ In jury argument, counsel is permitted wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable and offered in good faith. "[T]he jury argument must be extreme or manifestly improper or inject new and harmful facts into the evidence to constitute reversible error." *McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). That evidence was presented in trial without objection; therefore no error exists.

■ Regarding evidence pertaining to appellant cutting people, the three women at

the scene testified that appellant cut or stabbed the complainant, a person. Further, appellant testified that he fought with David Garcia, using his knife, and the jury could infer he used the knife against people.

Although the objection was not specific, as required, if we assume that the objection covered both the psycho and the cutting references, the argument was proper as a summation of the evidence as well as deductions from the evidence. The trial court did not err in overruling the objection. Point two is overruled.

### Variance Between Pleading and Proof

■ Appellant contends that because a fatal variance existed between the pleading and the proof, the evidence is insufficient. The information alleged that appellant did

knowingly and intentionally use a deadly weapon, a knife that in the manner of its use and intended use was capable of causing death and serious bodily injury, and did then and there knowingly and intentionally cause bodily injury to [complainant] by stabbing the said complainant with said deadly weapon.

The charge to the jury tracked the language of the charging instrument in the application of the law to the facts.

Appellant contends the State failed to prove that the complainant was stabbed, as it must prove beyond a reasonable doubt. The other two eyewitnesses at the scene, Maldonado and Quintero, testified that complainant was stabbed by appellant and that he stabbed at her. The complainant and the two eyewitnesses used the term "stab" interchangeably with the term "cut."

Appellant maintains that the complainant's hand was cut and the injury was not the result of stabbing. Appellant relies on *Blount v. State*, 376 S.W.2d 844, 848 (Tex. Crim.App.1964), in which the court distinguished between "stab" and "cut," saying that stab usually implies to thrust or to plunge while cut usually implies to gash or slash. However, the *Blount* court focused on the defendant's *intent to murder* by his physical action and held there was no inference of that intent by his action in that case.

That is not the question in the present case. It is further noted the *Blount* holding regarding *intent* was expressly overruled in *Boazman v. State*, 501 S.W.2d 894, 896 (Tex. Crim.App.1973). In the present case, the question is whether appellant's knife was used to stab the complainant, not whether his actions showed an intent to murder.

Definitions of stab and cut are relevant. WEBSTER'S NEW WORLD DICTIONARY 721 (Senior Ed.1968) defines "stab" as to pierce or wound with a knife, to thrust (a knife, etc.) into something, to go into in a sharp thrusting way. That dictionary at 187 defines "cut" as to make an opening with a sharp-edged instrument; to pierce, to gash or to pierce sharply as to hurt. THE LIVING WEBSTER ENCYCLOPEDIC DICTIONARY OF THE ENGLISH LANGUAGE 948 (5th Ed.1977) further defines "stab" as to aim a blow with a pointed weapon; to be extremely cutting. Moreover, it is common knowledge that an individual who is stabbed with a knife is cut.

In *Mott v. State*, 543 S.W.2d 623 (Tex. Crim.App.1976), the court rejected a similar contention that there was a fatal variance between the allegations in the indictment and the proof. The indictment alleged the defendants caused bodily injury by "hitting" the complainant with a glass. The proof showed the injuries occurred as a result of "cutting" with a glass. The court held that since the proof did show that the complainant was hit by each defendant and received cuts as a result thereof, the contention was without merit and overruled. *Id.* at 626.

The jury in the present case found that appellant committed the assault by stabbing the complainant with a knife. The record discloses that the witnesses expressed the terms stab and cut interchangeably, and the terms explained the same injury to the complainant. The proof showed that the complainant suffered a severe wound, a deep cut, as a result of appellant's stabbing action. We hold that the proof of appellant's action was sufficient to coincide with the allegations in the information. Thus, the proof did not vary from the allegation and was therefore sufficient.

Moreover, whether a variance between a charging instrument and evidence is fatal hinges on the materiality of the variance. *Dutton v. State,* 874 S.W.2d 206, 209 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). A variance is immaterial if it is inconceivable that the accused could have been misled or prejudiced thereby. *Id., citing French v. State,* 629 S.W.2d 279, 281 (Tex. App.—Fort Worth 1982, pet. ref'd). The alleged fatal variances in this case do not rise to the level of misleading or prejudicial. Point of error three is overruled.

### The Medical Records

Appellant next maintains he should be granted a new trial because, contrary to the court's order in limine, evidence that he had previously assaulted the complainant was admitted before the jury.

Before trial, appellant's motion in limine was granted that the State would not introduce evidence that he assaulted the same complainant the month before and was granted deferred adjudication. During the case-in-chief, the State moved to admit into evidence the complainant's medical records from the hospital. Defense counsel asked to examine the records and made objections pursuant to rule 803(4) of the Texas Rules of Criminal Evidence that certain statements on seven pages of the medical records as to diagnosis and history were not necessary for diagnosis and treatment. He objected that the information referred to "assault." The trial court asked, "This assault, right?" The prosecutor stated that he thought all the objected-to statements referred to this assault and not any prior assault. The objections were only to the word "assault" within the medical records. The objections were overruled.

The medical records contained several pages of reports of hospital treatment generated by the previous assault on July 5, 1995. Appellant agrees in his brief that the prosecutor did not act in bad faith in his statement to the court. Rather, he claims, "it is most likely that the medical records office at University Hospital copied all of [complainant's] records and prepared the exhibit for submission by the State."

We do not address the question of admissibility of the previous assault at the guilt-innocence phase under TEX.R.CRIM. EVID. 404(b) as it is not before the court. It is noted that appellant's name does not appear in the medical records, but there is reference to assault by her boyfriend. Our review of the record indicates that neither the prosecutor nor the defense counsel examined the medical records for references to the July 5th assault. No objection was directed to the fact that the medical records contained references to the assault the month before.

We first point out that cross-examination of Garcia by defense counsel elicited the fact that appellant had assaulted her the month before. She agreed that his anger in the instant assault arose when she told him about her conversation in the restroom with the two women. Appellant told her to go get the one who called him "psycho," but she refused. Defense counsel asked:

Q. You said earlier that you were afraid that—you wanted to hide the car?

A. Right.

Q. Were you afraid that Alex would take the car?

A. No. *I was afraid that he would come in and beat me up like he had already did a month before that.* (emphasis added).

Q. Why does that have anything to do with hiding the car?

A. This way he wouldn't know where I was at. If he sees my car, he knows I am there.

The jury received knowledge from the invited answer to the defense's question that appellant had assaulted the complainant the month before. Where the same evidence is presented elsewhere during trial without objection, no reversible error exists. *See Stoker v. State,* 788 S.W.2d 1, 12 (Tex.Crim. App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

It is axiomatic that motions in limine do not preserve error. *Maynard v. State,* 685 S.W.2d 60, 64 (Tex.Crim.App. 1985). Thus, appellant must object specifically to admission of the previous assault through the medical records. This he failed

to do. However, when the defendant introduces certain evidence, here the testimony of complainant that appellant assaulted her the month before, he may not complain when the opponent offers the same or similar evidence. *Id.* Moreover, assuming the inadmissibility of those portions of the medical records regarding the July 5th assault, inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove. *Brown v. State,* 757 S.W.2d 739, 741 (Tex. Crim.App.1988). Point of error four is overruled.

The judgment is affirmed.