TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00727-CR







Ronnie Charles Bryant, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0963490, HONORABLE TOM BLACKWELL, JUDGE PRESIDING








 Appellant Ronnie Charles Bryant appeals his conviction for aggravated sexual
assault of a child. See Tex. Penal Code Ann. § 22.021(a)(i)(B)(i) (West Supp. 1999). The jury
found appellant guilty, and the trial court assessed his punishment at 25 years' imprisonment.

 Appellant advances two points of error. First, he contends that the trial court erred
in overruling his motion for instructed verdict in that there was insufficient evidence, both legally
and factually, to support the conviction. Second, appellant urges that the trial court erred in
overruling his objection to the inadmissible testimony of Dr. Nauert and that the "error was not
harmless." We will affirm the conviction.



Facts


 On May 10, 1996, the six-year-old complainant S  B   was a student in a
kindergarten class at Wooten Elementary School in Austin. On that date, a teacher's aide
overheard S  B  's conversation with other children and reported the same to Alisca Bailey, the
teacher. Ms. Bailey conferred with S  B  , and, upon her agreement, sent S  B   to speak with Jack
Brock, the school counselor.

 Brock related that S  B   told him that the night before (May 9, 1996), appellant,
her stepfather, had visited her in her bedroom, took his "private" out of a hole in his boxer
underwear, got on her, and put "it in her." Later, appellant called her to the bathroom and put
"it" in her mouth. Brock testified S  B   stated that appellant "always do that" until he hears a
"thump." (1) According to Brock, S  B   related that appellant had done this to her five times and
that he also molested her sister, Cassandra. Following school policy, Brock contacted the Austin
Police Department.

 Austin Police Detectives Wendell Poindexter and Michael Shane interviewed
S  B  's mother, Sherrie Bryant, and asked her to take S  B   to the Child Advocacy Center. They
determined that appellant had not been in the home on May 9th (the "last night" referred to by
S  B  ) and had been in jail since May 7, 1996. The detectives did not discount S  B  's allegations
because children do not have a good sense of time.

 On May 16, 1996, S  B   was interviewed by Judith Cornelius for the Child
Advocacy Center. S  B   told Cornelius that appellant had "put his private in my kitty cat" and
that his hair had scratched her skin. Cornelius then had S  B   demonstrate what appellant had
done to her with the use of anatomically correct dolls. On the same date, a physical examination
was performed on S  B   by Dr. Beth Nauert, a pediatrician. Nauert related that S  B   told her
that appellant had placed his "private" into her privates, her "kitty cat." S  B  's general physical
examination was normal but not her genital examination. Dr. Nauert reported that S  B  's hymen
was irregular and was split in a manner suggestive of a penetrating injury. A piece of the hymen
was missing. Dr. Nauert explained that it would be rare for a child to be born with a split hymen. 
She did not believe that the condition of the hymen was caused by bicycle riding or gymnastics
or other activities. There was no scar tissue. Dr. Nauert stated that the condition of the hymen
was consistent with the history of vaginal penetration as related by S  B  .

 S  B   later returned to the Center for five therapy sessions with Barbara Edminston,
a psychotherapist, between June 8 and July 27, 1996. Each time S  B   took the position that no
one had touched her. S  B   made no accusation against appellant. She did tell Edminston that
three boys at school had "touched her kitty cat." Edminston had the impression that S  B   had
been instructed to say that nothing had happened.

 Edgar Bunton, S  B  's natural father, testified that in August 1995 she came to visit
him, his present wife, and the other children in his home; that on the second day of what was
supposed to be a two-week visit, S  B   complained of "hurting down below"; and that he and his
wife examined S  B   to determine if there was any torn tissue, blood, or semen. S  B   related that 
she had been "touched" by appellant. Bunton related that he found no injuries, but called S  B  's
mother to pick her up and take her to a doctor. He stated that shortly thereafter the mother had
reported to him that S  B   had an irregular hymen. He denied that he had sexually molested his
own daughter.

 On direct examination, the six-year-old S  B   confirmed what Brock had said she
told him. S  B   testified that appellant would take his private out of a hole in his boxer shorts and
put it into her private area; that he had done that to her five times; and had told her not to tell
anyone. The prosecutor used anatomically correct dolls to have S  B   demonstrate to the jury
what appellant had done to her.

 On cross-examination, S  B   denied that she had told her classmates about any
"nasty things." She testified that her teacher, Ms. Bailey, was a "mean witch," who made her
leave the classroom and go sleep in the bathroom. S  B   then denied that appellant had ever
touched her. She told the prosecutor that appellant had touched her because it was a joke, a joke
taught to her by her older stepsisters who lived at her natural father's house. S  B   also stated that
she had lied to Judith Cornelius at the Child Advocacy Center.

 On redirect examination, S  B   related that her courtroom testimony was the first
time that she had told anyone (including her mother) that the charges were "all a joke" and "all
a lie." She then denied each statement that Jack Brock had attributed to her. She responded to
many of the prosecutor's questions by merely nodding. She nodded affirmatively (according to the
court reporter) when asked if she loved appellant and did not want anything "bad" to happen to
him. The record then reflects:


Q: Would it be correct that you don't want him to abuse you anymore either?


A: (Nodded negatively)


Q: You just want that to stop?


A: (Nodded affirmatively)



 On recross-examination, appellant's counsel asked S  B   what it was that she
wanted stopped. She replied, "So he can stop messing with me," and made clear that she was
referring to appellant. Once again, however, she stated that appellant had never touched her.

 Sherrie Bryant, S  B  's mother, testified for the State that S  B   visited her natural
father in the summer of 1995, and that the father called her and told her that S  B   had accused
appellant of molesting her. Sherrie confronted appellant, her husband, and he denied such
allegations. After the visit by the police she took S  B   to the Child Advocacy Center. She
related that in September 1996 prior to trial S  B   had told her the accusations were a joke and that
she (S  B  ) had lied.

 Cassandra, S  B  's sister, testified that appellant had never molested her, contrary
to any statement by S  B   to Jack Brock. Sherrie Bryant testified again, this time for the defense. 
Her testimony left the inference that if S  B   had been abused, it may have been in the home of
her natural father.


Procedure


 Appellant claims at the outset that the trial court erred in overruling his motion for
an instructed verdict of "not guilty." Such a motion is normally considered on appeal to be a
challenge to the legal sufficiency of the evidence to sustain the conviction. See Cook v. State, 858
S.W.2d 467, 470 (Tex. Crim. App. 1993); Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim.
App. 1990), cert. denied, 449 U.S. 954 (1991). 

 Appellant combines his argument as to the lack of both legal and factual sufficiency
of the evidence in one point of error. It is better practice to separate these contentions into
different points of error because the standards of review are different and the factual sufficiency
review begins with the presumption that the evidence is legally sufficient. See Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996); see also Nevels v. State, 954 S.W.2d 154, 159 n.4
(Tex. App.--Waco 1997, pet. ref'd). We shall separate appellant's initial contention into two
parts.


Legal Sufficiency


 In determining whether the evidence is legally sufficient to support the judgment,
we view the evidence in the light most favorable to the judgment, asking whether any rational trier
of fact could have found beyond a reasonable doubt all the essential elements of the offense
charged. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507
(Tex. Crim. App. 1996); Emery v. State, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994), cert.
denied, 513 U.S. 1192 (1995).

 The evidence, viewed in this light, and all reasonable inferences drawn therefrom,
are evaluated in this review. See Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App.
1995). A reviewing court must consider all evidence, rightly or wrongly admitted, which the trier
of fact was permitted to consider. See Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App.
1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. denied, 511 U.S.
1046 (1994). The standard of review is the same for both direct and circumstantial evidence. See
Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1020
(1993). Appellate courts measure the legal sufficiency of the evidence against a hypothetically
correct charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In analyzing
a challenge to the legal sufficiency of the evidence, the reviewing court does not realign,
disregard, or weigh the evidence. See Rodriguez v. State, 939 S.W.2d 211, 218 (Tex.
App.--Austin 1997, no pet.). The jury as the trier of fact is the sole judge of the credibility of
the witnesses and the weight to be given the testimony, and may accept or reject all or any of any
witness' testimony. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert.
denied, 488 U.S. 872 (1988); Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). 
Reconciliation of evidentiary conflicts is solely the function of the trier of fact. See Miranda v.
State, 813 S.W.2d 724, 733-34 (Tex. App.--San Antonio 1991, pet. ref'd); Juarez v. State, 796
S.W.2d 523, 524 (Tex. App.--San Antonio 1990, pet. ref'd). Moreover, the evidence is not
rendered insufficient merely because the defendant presented a different version of the events. See
Turro v. State, 867 S.W.2d 43, 47-48 (Tex. Crim. App. 1993).

 Appellant principally relies upon the equivocal testimony of the six-year-old
complainant to challenge the sufficiency of the evidence. On this basis he claims that the State
failed to sustain its burden and that the trial court erred in overruling the motion for instructed
verdict.

 Appellant overlooks the testimony of Jack Brock, the school counselor, who was
designated the outcry witness. The outcry witness's testimony was admissible under article 38.072
of the Code of Criminal Procedure (2) as an exception to the hearsay rule. It is considered
substantive evidence admissible for the truth of the matter asserted in the testimony. See
Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); Gallegos v. State, 918 S.W.2d
50, 53-54 (Tex. App.--Corpus Christi 1996, pet. ref'd). Brock's testimony that S  B   told him
that appellant committed the offense must be considered as having probative value in determining
the sufficiency of the evidence. Such outcry testimony is, by itself, sufficient to support a jury's
verdict. See Rodriguez, 819 S.W.2d at 873.

 In addition to Brock's testimony, Judith Cornelius related that S__B__ 
demonstrated by the use of anatomically correct dolls what appellant had done to her. Dr. Nauert,
in taking S  B  's medical history, heard S  B   describe appellant's actions, and found the
condition of S  B  's hymen consistent with S  B  's revelations.

 S  B  's testimony on direct examination was consistent with the above described
testimony, but on cross-examination she contradicted her earlier testimony. Such contradiction
is not necessarily controlling. See Hollinger v. State, 911 S.W.2d 35, 38 (Tex. App.--Tyler
1995, pet. ref'd); Knabe v. State, 836 S.W.2d 837, 839 (Tex. App.--Fort Worth 1992, pet.
ref'd). Contradictions in the testimony of the complainant or complainants do not destroy the
sufficiency of the evidence. See Weisinger v. State, 775 S.W.2d 424, 429 (Tex. App.--Houston
1989, pet. ref'd) (two boys in a sodomy case). That a witness makes some contradictory
statements goes to the weight of the evidence and the credibility to be given to that witness by the
trier of fact. Id. In both Hollinger and Knabe, the evidence was held legally sufficient to support
the conviction for aggravated sexual assault of a child despite the fact that the child victim testified
someone other than the defendant had assaulted him.

 In the instant case, the jury was the trier of fact and could accept or reject all or any
part of any witness's testimony. See Sharp, 707 S.W.2d at 614. Reconciliation of evidentiary
conflicts is the sole function of the fact trier. See Miranda, 813 S.W.2d at 733-34.

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that a rational trier of fact could have found beyond a reasonable doubt all the essential elements
of the offense charged. We reject appellant's contention that the evidence is legally insufficient
to sustain the conviction.


Factual Sufficiency


 In evaluating a factual sufficiency question, the appellate court begins with the
presumption that the evidence is legally sufficient to support the conviction. See Clewis, 922
S.W.2d at 134. In this type of analysis, the reviewing court views all the evidence without the
prism of "in the light most favorable to the prosecution," and sets aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 120. "A Court
of Appeals may not reverse a jury's decision simply because it disagrees with the result; the
appellate court must defer to the jury findings and may find the evidence factually insufficient only
where necessary to prevent manifest injustice." Cain, 958 S.W.2d at 407. In the event a court
of appeals finds the evidence factually insufficient, it must provide a detailed explanation of that
finding so that it is clear that the court accorded the proper deference to the jury findings. See Id. 
When dealing with a factual sufficiency claim, an appellate court reviews the fact-finder's
weighing of the evidence, but it cannot substitute its judgment for that of the fact finder. Clewis,
922 S.W.2d at 133. It is not within the province of the reviewing court to interfere with the jury's
resolution of conflicts in the evidence or to pass on the credibility of the witnesses. The jury's
verdict on such matters is generally regarded as conclusive. See Davila v. State, 930 S.W.2d 641,
647 (Tex. App.--El Paso 1996, pet. ref'd).

 After viewing all the evidence equally, including the testimony of the defense
witnesses and the existence of alternative hypotheses, (3) we conclude that the jury's verdict is not
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The
first point of error is overruled.


Second Point of Error


 Next, appellant contends that the trial court erred in overruling his objection to
inadmissible testimony of Dr. Nauert and that the error was not harmless. On direct examination,
the prosecutor established that Dr. Nauert had examined S  B   on May 15, 1996, and had taken
a history from S  B  . The record then reflects:


Q: Can you please tell the jury what you learned in that history?


Mr. Collins [defense counsel]: Judge, we're going to object to that.


The Court: I'll overrule the objection.



Thereafter, Dr. Nauert related that when S  B   was asked why she had come to see her [Nauert],
S  B  revealed what appellant had done to her. Appellant contends that such testimony was
inadmissible, the error was preserved, and harm resulted.

 Appellant's general objection presents nothing for review. See Lewis v. State, 664
S.W.2d 345, 349 (Tex. Crim. App. 1984); Miranda, 813 S.W.2d at 742. Moreover, statements
made for purposes of medical diagnosis or treatment and describing medical history are excluded
from the hearsay rule. See Tex. R. Evid. 803(4).

 Appellant calls attention to his motion in limine which requested that the State 
instruct Dr. Nauert she was not to testify in a manner which would attempt to inject her personal,
rather than professional, opinion into the case. Appellant cited Yount v. State, 872 S.W.2d 706
(Tex. Crim. App. 1993), in which Dr. Nauert was also a witness. The trial court granted the
motion. Before Dr. Nauert testified, the court had her read the motion. In Yount, the court held
that testimony by an expert witness to the effect that child victims of sexual abuse are truthful was
inadmissible under Rule 702. Tex. R. Evid. 702; Yount, 872 S.W.2d at 709-10. 

 A motion in limine generally does not itself preserve error. See Maynard v. State,
685 S.W.2d 60, 64 (Tex. Crim. App. 1985); Guerrero v. State, 964 S.W.2d 32, 38 (Tex.
App.--San Antonio 1997, pet. ref'd). Further, the motion here was merely directed to having the
State instruct the witness not to interject her personal opinion. It was not an objection to the
testimony now complained of. A complaint on appeal must comport with a trial objection. See
Rezac v. State, 782 S.W.2d. 869, 870 (Tex. Crim. App. 1990). Nothing in Dr. Nauert's
testimony violated the holding in Yount as now urged on appeal. Appellant's appellate reliance
on Yount is misplaced. The second point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Jones and Onion*

Affirmed

Filed: February 19, 1999

Do Not Publish


* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. This was later explained in the record as meaning the sound of someone getting out of bed
somewhere in the house.
2. Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 1999).
3. See Najera v. State, 955 S.W.2d 698, 700 (Tex. App.--Austin 1997, no pet.).



amination,
the prosecutor established that Dr. Nauert had examined S  B   on May 15, 1996, and had taken
a history from S  B  . The record then reflects:


Q: Can you please tell the jury what you learned in that history?


Mr. Collins [defense counsel]: Judge, we're going to object to that.


The Court: I'll overrule the objection.



Thereafter, Dr. Nauert related that when S  B   was asked why she had come to see her [Nauert],
S  B  revealed what appellant had done to her. Appellant contends that such testimony was
inadmissible, the error was preserved, and harm resulted.

 Appellant's general objection presents nothing for review. See Lewis v. State, 664
S.W.2d 345, 349 (Tex. Crim. App. 1984); Miranda, 813 S.W.2d at 742. Moreover, statements
made for purposes of medical diagnosis or treatment and describing medical history are excluded
from the hearsay rule. See Tex. R. Evid. 803(4).

 Appellant calls attention to his motion in limine which requested that the State 
instruct Dr. Nauert she was not to testify in a manner which would attempt to inject her personal,
rather than professional, opinion into the case. Appellant cited Yount v. State, 872 S.W.2d 706
(Tex. Crim. App. 1993), in which Dr. Nauert was also a witness. The trial court granted the
motion. Before Dr. Nauert testified, the court had her read the motion. In Yount, the court held
that testimony by an expert witness to the effect that child victims of sexual abuse are truthful was
inadmissible under Rule 702. Tex. R. Evid. 702; Yount, 872 S.W.2d at 709-10. 

 A motion in limine generally does not itself preserve error. See Maynard v. State,
685 S.W.2d 60, 64 (Tex. Crim. App. 1985); Guerrero v. State, 964 S.W.2d 32, 38 (Tex.
App.--San Antonio 1997, pet. ref'd). Further, the motion here was merely directed to having the
State instruct the witness not to interject her personal opinion. It was not an objection to the
testimony now complained of. A complaint on appeal must comport with a trial objection. See
Rezac v. State, 782 S.W.2d. 869, 870 (Tex. Crim. App. 1990).